# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 6, 2001 Session

## SOUTHERN CONSTRUCTORS, INC.  v.  LOUDON COUNTY
## BOARD OF EDUCATION

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Loudon County**
**No. 9756    Hon. Frank V. Williams, III, Chancellor**

---

**No. E2000-02577-SC-S09-CV - Filed October 26, 2001**

---

The issue in this case is whether a county board of education has the authority to arbitrate a dispute arising out of a school construction contract.  After the parties completed arbitration, the plaintiff filed suit to vacate the award, arguing that the defendant, a county board of education, lacked the statutory authority to agree to arbitration.  The defendant unsuccessfully moved for summary judgment, and it sought interlocutory appeal with the trial court's permission.  The intermediate court, however, denied the interlocutory appeal, finding that the trial court's decision was consistent with prior cases from the Eastern Section Court of Appeals.  We granted permission to appeal and hold that the rule of strict construction of local governmental powers should be retained. We also hold, though, that the power to arbitrate construction contract disputes is fairly implied from the express authority to enter into construction contracts.  We therefore reverse the trial court's denial of summary judgment and dismiss the case.

### Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the
### Court of Appeals Reversed; Case Dismissed

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

R. Loy Waldrop, Linda J. Hamilton Mowles, and Maranee L. Petersen, Knoxville, Tennessee, for the appellant, Loudon County Board of Education.

Monty L. Walton and Stephanie K. Hunt, Knoxville, Tennessee, for the appellee, Southern Constructors, Inc.

### OPINION

# FACTUAL BACKGROUND

On April 24, 1997, the Loudon County Board of Education ("Board") contracted with Southern Constructors, Inc. ("SCI"), for additions and renovations to two county school buildings. Shortly after construction began, a subcontractor for SCI ruptured an electrical cable at one of the sites, damaging electrical switchgear at the school and disrupting power to another building. The subcontractor subsequently repaired the damaged lines and equipment at no cost to the Board.

Although SCI supplied power to parts of the building during the repair of the electrical equipment, most of the school building remained without electricity. On July 17, a Board employee discovered mold and mildew growth in a part of the school building without electrical power, and the Board requested that SCI remove the growth. SCI declined to do so, however, claiming that it was not contractually responsible for such expenses. The Board then hired outside contractors to remove the growth at a cost of $115,248.22, and it withheld this amount from the balance owed to SCI under the construction contract.

SCI then demanded that Board pay the withheld amount, and after a failed attempt to mediate the dispute, SCI requested that the Board agree to arbitration. Although the parties had removed the arbitration clause from their original contract, both parties executed a written arbitration agreement in March 1999, and two months later, a hearing was held before a mutually selected arbitrator. On May 26, 1999, the arbitrator rendered a decision in favor of the Board, but he awarded $10,000 of the withheld amount to SCI in addition to interest and administrative expenses.[1] Thereafter, the Board issued a check to SCI for $12,988.25, which SCI deposited on June 7.

Less than two months later, SCI filed a complaint in the Loudon County Chancery Court seeking to set aside the arbitration award. SCI claimed that after the issuance of the arbitration award, it learned that the Board, "as a governmental entity[,] had no authority to enter into an agreement to arbitrate and its act in doing so was ultra vires." More specifically, SCI alleged that the Board lacked the power to enter into arbitration agreements because the General Assembly did not expressly give that power to county school boards and because other express legislative grants of power did not imply that county school boards possessed any such authority.

On September 29, 1999, the Board filed a motion for summary judgment, asserting that the chancery court lacked subject matter jurisdiction over the dispute. The Board claimed that because SCI agreed to arbitrate the dispute, and because the arbitration award had already been rendered and satisfied, state and federal law prevented SCI from seeking a *de novo* hearing of that award in court. However, the court denied the Board's motion, agreeing with Chattanooga Area Regional Transit

---

[1] Though not relevant to the issues in this appeal, the arbitrator specified no reasons for the $10,000 award to SCI, and he denied SCI's motion for clarification of the award.

Authority v. Parks Construction Co.,[2] that local governments do not have the implied power to arbitrate disputes.

Pursuant to Tennessee Rule of Appellate Procedure 9, the Board then requested permission to seek interlocutory appeal, which the chancery court granted. The court cited two reasons for granting permission: (1) the presence of conflicting decisions from the Court of Appeals evidenced a need to develop a uniform body of law as to whether a governmental entity may arbitrate an existing dispute; and (2) a decision in favor of the Board would prevent needless, expensive, and protracted litigation. The Board then petitioned the intermediate court for interlocutory appeal.

The Court of Appeals denied the Board's petition for interlocutory appeal, but it did so based upon its view that the Board's case lacked merit. In its order, the court noted the presence of conflicting decisions between the Eastern and Western sections of the Court of Appeals on this issue, but it felt constrained to follow the opinion of its own section and to deny the motion. However, the panel further suggested in its order that the Board seek permission to appeal from this Court.

We then granted the Board's application for permission to appeal on the issue of whether county boards of education have the authority to arbitrate contract disputes concerning the construction and renovation of school buildings. For the reasons given herein, we hold that the county boards of education do have authority to arbitrate construction contract disputes, and although we decline to abolish the rule of strict construction known as "Dillon's Rule," we conclude that this authority is fairly implied from the express power to enter into construction contracts. Therefore, because the Loudon County School Board is entitled to summary judgment, we reverse the judgment of the Court of Appeals and dismiss the case.

## ANALYSIS

The question before the Court is whether the Loudon County Board of Education possesses the authority under the laws of the State of Tennessee to arbitrate disputes arising out of a school construction contract. If the Board possesses no such authority, then its agreement to arbitrate the dispute in this case, along with the ultimate award, are void as *ultra vires*. The Board urges this Court, under several legal theories, to find that it possesses the authority to enter into such arbitration agreements, and SCI urges this Court to apply Dillon's Rule and to strictly construe the statutory powers of county school boards against having any such authority. Any question regarding the scope of local governmental authority is a question of law, and as such, we review the issue in this case under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts. See, e.g., Daron v. Department of Corr., 44 S.W.3d 478, 480 (Tenn. 2001); Johnson v. Johnson, 37 S.W.3d 892, 894 (Tenn. 2001).

---

[2] See No. 03A01-9712-CH-00524, 1999 WL 76074 (Tenn. Ct. App. filed at Knoxville, Jan. 28, 1999). Although this decision appears to be in conflict with another unreported decision from the Western Section of the Court of Appeals, the chancery court felt bound by the decision of the Eastern Section in Parks Construction Co. We granted permission to appeal in Parks Construction Co. on September 13, 1999, but the case was settled during the pendency of that appeal.

# I.  DILLON'S RULE AND THE SCOPE OF LOCAL GOVERNMENTAL AUTHORITY IN TENNESSEE

At its most basic level, Dillon's Rule is a canon of statutory construction that calls for the strict and narrow construction of local governmental authority.  As originally articulated by its author, then Chief Justice John F. Dillon of the Iowa Supreme Court, Dillon's Rule provides the following regarding the nature and scope of municipal government authority:

> In determining the question now made, it must be taken for settled law, that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily implied or necessarily incident to the powers expressly granted; third, those absolutely essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable; fourth, any fair doubt as to the existence of a power is resolved by the courts against the corporation—against the existence of the power.

Merriam v. Moody's Ex'r, 25 Iowa 163, 170 (1868).

As in many jurisdictions throughout the nation, Dillon's Rule has been applied in this state for more than a century to determine the scope of local governmental authority.  Beginning with Mayor & City Council v. Linck, 80 Tenn. (12 Lea) 499 (1883), this Court has recognized that municipal governments in Tennessee derive the whole of their authority solely from the General Assembly and that courts may reasonably presume that the General Assembly "has granted in clear and unmistakable terms all [power] that it has designed to grant . . . ." Id. at 505 (citation omitted).  To this end, the Linck Court held that municipal governmental authority should be strictly construed, and it stated that a municipal government may exercise a particular power only when one of the following three conditions is satisfied: (1) the power is granted in the "express words" of the statute, private act, or charter creating the municipal corporation; (2) the power is *necessarily or fairly implied* in, or *incident* to[,] the powers expressly granted"; or (3) the power is one that is neither expressly granted nor fairly implied from the express grants of power, but is otherwise implied as "essential to the declared objects and purposes of the corporation." See id. at 504 (emphases in original).  Consistent with other articulations of Dillon's Rule, we also stated that "'[a]ny fair, reasonable doubt concerning the existence of the power is resolved by the courts against the corporation and the power is denied.'" Id. (quoting 1 John F. Dillon, Commentaries on the Law of Municipal Corporations 173 (1st ed. 1872)).

Although a discussion of the numerous applications of Dillon's Rule in this state is unnecessary, the Rule has been consistently applied to all forms of local government, including those of cities, counties, and special districts.  Despite this wide application, however, many legal commentators, and some courts, have criticized the Rule as needlessly depriving local governments of the ability to deal with, and respond to, changing local situations and needs. See, e.g., Gerald E. Frug, The City as a Legal Concept, 93 Harv. L. Rev. 1059 (1980); State v. Hutchinson, 624 P.2d

1116, 1121 (Utah 1980). Indeed, the Board in this case cites many of these same concerns as reasons to abrogate Dillon's Rule in Tennessee.

We are not unmoved by some of these criticisms, but while Dillon's Rule is essentially only a canon of construction, it continues to reflect the constitutional realities of local government in this state. Article II, section 3 of our Constitution confers upon the General Assembly the whole of the state's legislative power, and with limited exception, see Gibson County Special Sch. Dist. v. Palmer, 691 S.W.2d 544, 550 (Tenn. 1985), the General Assembly has the sole and plenary authority to determine whether, and under what circumstances, portions of that power should be delegated to local governments.[3] As this Court has previously acknowledged, local governments have never possessed the inherent right to autonomous self-government, and all local governmental authority "has always been interpreted as a matter of constitutional entitlement or legislative delegation of authority." Civil Serv. Merit Bd. v. Burson, 816 S.W.2d 725, 727 (Tenn. 1991) (citation omitted). Plainly stated, then, without some form of constitutional authorization, local governments in Tennessee possess only those powers and authority as the General Assembly has deemed appropriate to confer upon them.

It is from this rationale—that local governments have no inherent right to autonomous self-government—that the rule of strict construction of local governmental authority arises in this state. Though at least one court has criticized strict construction of local governmental power as originating from a time when distrust of such government was prevalent, see Hutchinson, 624 P.2d at 1121, we see no evidence that such has ever been the reason in this state for similar holdings. Far from being an irrational interpretive canon, the doctrine of strict, but reasonable, construction of delegations of state legislative power seeks only to give effect to the practical nature of local governmental authority in Tennessee. As such, absent some indication to the contrary, the General Assembly must be presumed to have endowed local governments with only as much authority as it has granted through the language of its delegation. See Linck, 80 Tenn. (12 Lea) at 505.

---

[3] See Tenn. Const. art. VII, § 1; Tenn. Const. art. XI § 8; Tenn. Const. art. XI, § 9. With regard to municipal governments, this Court has acknowledged that Article XI, section 8 confers upon the General Assembly the power to create municipal corporations and that "no constitutional restriction [exists upon the power of the General Assembly] requiring the consent or the acceptance of the inhabitants of the district or incorporated area to make it a corporation." See Bradley v. Rock Gardens Util. Dist., 186 Tenn. 665, 667-68, 212 S.W.2d 657, 658 (1948). Similarly, with respect to county governments, we have noted that the first clause of Article XI, section 9 establishes "that the county courts constitute the governing body of these corporations, that these courts have judicial and police powers, [and] that they can exercise that portion of the sovereignty of the state communicated to them by the Legislature, and no more . . . ." Wright v. Cunningham, 115 Tenn. 445, 466, 91 S.W. 293, 298 (1905) (citations and internal quotation marks omitted).

While the General Assembly generally lacks the authority to delegate its law-making powers to other entities, the legislature may do so under two circumstances: when the Constitution itself authorizes the delegation and when the delegation is "'sanctioned by immemorial usage originating anterior to the Constitution and continuing unquestioned thereunder.'" Kee v. Parks, 153 Tenn. 306, 313, 283 S.W. 751, 753 (1926) (quoting Wright, 115 Tenn. at 466, 91 S.W. at 297-98). We have previously held that the "immemorial usage" exception to the non-delegation doctrine permits the General Assembly (1) to confer powers upon municipal corporations in their several charters and through general statutes, and (2) in conjunction with Article XI, section 9, to confer powers upon the several counties for the management of their local matters. Id.

Nevertheless, although the constitutional structure of local government in Tennessee provides a sound basis for the continued strict construction of local governmental authority, we also recognize that several important exceptions to Dillon's Rule have diminished its practical importance. For example, the General Assembly itself can mitigate any unwanted effects of strict construction by supplying direct evidence of its intent to grant broad local governmental powers when it chooses to do so. Importantly, strict construction of local governmental power is only appropriate when legislative intent as to the proper scope of that power is absent or otherwise ambiguous,[4] and an intent to have local powers broadly construed may be expressed either in the language granting the particular power itself or in a separate statute applying to all grants of power generally.[5] Because Dillon's Rule is essentially only a canon of construction used to ascertain the intention of the General Assembly, the Rule must necessarily yield when a contrary intent plainly appears. See Dorrier v. Dark, 540 S.W.2d 658, 659 (Tenn. 1976) ("All rules of statutory interpretation have only one purpose, and that is to ascertain legislative intent.").

As an important corollary to this principle, where the General Assembly grants comprehensive governmental power to the local authority without either enumerating the powers or expressly limiting the scope of the authority, that "general provision [will] be *liberally* construed."

---

[4] Some state legislatures, such as the North Carolina General Assembly, have enacted statutes to abolish the effect of Dillon's Rule:

> It is the policy of the General Assembly that the cities of this State should have adequate authority to execute the powers, duties, privileges, and immunities conferred upon them by law. To this end, the provisions of this Chapter and of city charters shall be broadly construed and grants of power shall be construed to include any additional and supplementary powers that are reasonably necessary or expedient to carry them into execution and effect. . . .

N.C. Gen. Stat. § 160A-4 (1994). Indeed, Indiana has abolished the effect of Dillon's Rule by stating its intent more directly: "The rule of law that a unit has only: (1) powers expressly granted by statute; (2) powers necessarily or fairly implied in or incident to powers expressly granted; and (3) powers indispensable to the declared purposes of the unit; is abrogated." See Ind. Code Ann. § 36-1-3-4(a) (1997). This statute further provides that a local government has "(1) all powers granted it by statute; and (2) all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." See id. § 36-1-3-4(b). Our General Assembly has taken no similar action in this regard.

[5] For example, Tennessee Code Annotated section 6-19-102 clearly shows an intention to have municipal powers broadly construed:

> The enumeration of particular powers in this charter is not exclusive of others, nor restrictive of general words or phrases granting powers, nor shall a grant or failure to grant power in this chapter impair a power granted in any other part of this charter, and whether powers, objects, or purposes are expressed, conjunctively or disjunctively, they shall be construed so as to permit the city to exercise freely any one (1) or more such powers as to any one (1) or more such objects for any one (1) or more such purposes.

See also Tenn. Code Ann. §§ 7-82-306 (stating the same with respect to utility districts); 7-83-302 (stating the same with respect to power districts); 65-23-105 (stating the same with respect to the State Rural Electrification Authority). Admittedly, it appears as though section 6-19-102 largely duplicates Tennessee Code Annotated section 6-19-101(33), which provides that "[e]very municipality incorporated under [city manager-commission] charter may . . . [h]ave and exercise all powers that now or hereafter it would be competent for this charter specifically to enumerate, as fully and completely as though these powers were specifically enumerated." See also Tenn. Code Ann. § 6-2-201(32) (same). However, we need not remark further on the precise applications of these two statutes, other than to say that they both properly reflect a legislative intention to have municipal powers broadly construed.

See Linck, 80 Tenn. (12 Lea) at 508 (emphasis in original). One example of a comprehensive grant of power may be seen in the charter government provisions for counties authorized by Article VII, section 1 of the Tennessee Constitution and Tennessee Code Annotated sections 5-1-201 to 5-1-214. Under a charter form of government, counties are authorized to "pass ordinances relating to purely county affairs," subject only to the exceptions that these ordinances "shall not be opposed to the general laws and shall not interfere with the local affairs of any municipality within the limit of such county." Counties organized under charter government, therefore, are not strictly limited to those powers otherwise granted by the General Assembly, and they possess broad authority for the regulation of their own local affairs. Consequently, when the issue concerns the scope of a general grant of power such as this, Dillon's Rule cannot be applied to narrowly limit the exercise of that power by a local authority.

Further, courts have not taken a narrow view of local governmental power when the General Assembly has conferred general welfare authority to protect the citizens' health, convenience, and safety. In the same decision that recognized Dillon's Rule as a rule of construction in this state, this Court stated that where the legislature grants local governments broad authority to provide for the general welfare, Dillon's Rule cannot be used to challenge the exercise of that authority as beyond the scope of the delegated power. See Linck, 80 Tenn. (12 Lea) at 509-10. Because the very nature of general police powers demands that such authority receive a broad construction to accomplish its purposes, the Linck Court held that so long as ordinances adopted under a grant of general welfare authority are not "unreasonable or oppressive[,] they are valid, and will be maintained." Id. at 510; see also McKelley v. City of Murfreesboro, 162 Tenn. 304, 310, 36 S.W.2d 99, 100 (1931).[6] We continue to concur in that assessment.

Finally, an exception to Dillon's Rule necessarily arises when the issue concerns the authority of home rule municipalities. In 1953, the Constitution was amended to permit municipal governments to adopt and operate under home rule authority, see Tenn. Const. art. XI, § 9, and as this Court has previously recognized, "'[t]he whole purpose of the Home Rule Amendment was to vest control of local affairs in local governments.'" Burson, 816 S.W.2d at 729 (Tenn. 1991) (quoting Farris v. Blanton, 528 S.W.2d 549, 551 (Tenn. 1975)). The effect of the home rule amendments was to fundamentally change the relationship between the General Assembly and these types of municipalities, because such entities now derive their power from sources other than the prerogative of the legislature.[7] Consequently, because the critical assumption underlying application

---

[6] A modern example of a grant of general police power to municipal governments may be found in Tennessee Code Annotated section 6-2-201(22), which provides that

> [e]very municipality incorporated under [a mayor-aldermanic] charter may . . . [d]efine, prohibit, abate, suppress, prevent and regulate all acts, practices, conduct, businesses, occupations, callings, trades, uses of property and all other things whatsoever detrimental, or liable to be detrimental, to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the municipality, and exercise general police powers.

See also Tenn. Code Ann. § 6-19-101(22) (stating the same with regard to city manager-commission charter).

[7] In this respect, home rule municipalities differ from counties organized under a charter government, whose
(continued...)

-7-

of Dillon's Rule is no longer valid as to home rule municipalities, Dillon's Rule simply cannot be applied to limit any authority exercised by them.[8]

Subject to these important exceptions, we hold that the courts of this state should continue to strictly, but reasonably, construe the scope of local governmental authority delegated by the General Assembly. The legislature has relied upon the continued existence of this presumption in delegating its power to local authorities, and it has displayed a noted ability to abrogate the Rule when necessary to accomplish its desired objectives. While Dillon's Rule is essentially only a judicial rule of statutory construction, and is therefore within our power to abrogate, we acknowledge that the Rule is generally necessary to give effect to the constitutional realities of local government in this state.[9] Consequently, we retain Dillon's Rule, subject to its exceptions, as a rule of construction to determine the scope of local governmental authority.

## II. APPLICATION OF DILLON'S RULE IN THIS CASE

Although we have found no case in Tennessee expressly holding that Dillon's Rule applies in construing the authority of county boards of education, we nevertheless conclude that it is proper to do so. Just as the Constitution grants the General Assembly plenary authority to structure and provide for local government, Article XI, section 12 of the Constitution also grants the General Assembly plenary and exclusive authority to "provide for the maintenance, support and eligibility standards of a system of free public schools." Indeed, this Court has expressly recognized that corporate entities created for educational purposes are under the control of the Legislature, "so that [they] may be abolished or [their] power may be enlarged or [their] responsibilities increased at any time by that body, without the danger of encountering constitutional difficulties." Board of Educ. v. Shelby County, 155 Tenn. 212, 219, 292 S.W. 462, 464 (1927) (citation and internal quotation marks omitted). Moreover, while county boards of education are not part of the general county

---

[7] (...continued)
establishment is authorized by the Constitution, but whose authority remains subject to the prerogative of the legislature. Compare Tenn. Const. art. XI, § 9, with Tenn. Const. art. VII, § 1. Moreover, unlike counties organized under charter government, the charters of home rule municipalities cannot be amended or repealed through legislative acts. See County of Shelby v. McWherter, 936 S.W.2d 923, 934 (Tenn. Ct. App. 1996). Despite these important differences, though, it must be recognized that both types of local government are beyond application of Dillon's Rule. The former is so because of the constitutional change in the relationship between the state and local governments, and the latter is so because it exercises authority pursuant to a general powers clause.

[8] Other states have also recognized that the adoption of home rule authority effectively abrogates Dillon's Rule of construction. One very recent example is found in Bigs v. City of Wichita, 23 P.3d 855, 863 (Kan. 2001), wherein the Kansas Supreme Court noted specifically that "[h]ome rule abolished the "Dillon Rule" under which cities were considered creatures of the legislature and could only exercise that authority conferred by statute." (citations omitted).

[9] Although the constitutional structure of government in Tennessee provides a sound basis for the continued use of Dillon's Rule, we in no way hold that the Rule is somehow constitutionally required or beyond the power of the judiciary to abrogate. It certainly is not. Rather, we mention these provisions only to recognize the constitutional reality that, with limited exception, local governments are creatures of the state and possess no more authority than has been conferred upon them by the General Assembly.

government in the sense that they derive their powers and duties from the county charter, they are in essence part of that local government, exclusively vested with statutory authority in all matters relating to public education. See Reed v. Rhea County, 189 Tenn. 247, 251, 225 S.W.2d 49, 50 (1949) ("It follows that a County Board of Education is a county government entity exercising a governmental function in the operation and maintenance of the schools of the County.").[10]

Consequently, if Dillon's Rule is generally applied to determine the scope of municipal and county governmental authority, it seems only appropriate, in the absence of any exception, to apply this rule of construction to determine the scope of local school board authority as well. In this case, however, we have been unable to locate any expressed intention by the General Assembly to confer general powers upon the county boards of education or to have the expressed powers broadly construed.[11] Moreover, the General Assembly does not appear to have conferred any type of "home rule" authority upon county boards of education or particular schools as has been done in other states. See, e.g., Cal. Educ. Code § 47610 (West 1993); Tex. Educ. Code Ann. § 12.054 (West 1996); Tex. Educ. Code Ann. § 12.103 (West 1996), *amended by* 2001 Tex. Sess. Law Serv. ch. 1504, § 4 (effective Sept. 1, 2001). Therefore, we conclude that Dillon's Rule applies to determine whether the Board possesses the authority to arbitrate its contract dispute with SCI.

Our first inquiry, then, in applying Dillon's Rule in this case is whether the General Assembly has expressly conferred upon county school boards the power to arbitrate disputes arising out of a construction contract. The authority to enter into construction contracts is granted by Tennessee Code Annotated section 49-2-203(a)(4), which confers upon county school boards the authority to "[p]urchase all supplies, furniture, fixtures and material of every kind through the executive committee." Through subsections (C)(1), (C)(2), and (D) of this provision, the General Assembly has given the local school boards the authority to "contract for the construction of school buildings or additions to existing buildings," and it has emphasized that "[n]o board of education shall be precluded from purchasing materials and employing labor for the construction of school buildings or additions thereto." However, no part of section 49-2-203 expressly mentions any authority to enter into arbitration agreements, either to confer the power or to deny it.

Because the General Assembly has not expressly conferred upon county school boards the power to arbitrate disputes arising out of construction contracts, our next inquiry is whether that power is fairly implied from the powers expressly granted. The law implies powers from express

---

[10] The Board disputes that Dillon's Rule applies because it is performing the "state function" of education. Even if this fact were relevant to the analysis, the Board's argument appears to be contradicted by Boswell v. Powell, 163 Tenn. 445, 448, 43 S.W.2d 495, 495 (1931), which held that while "a county board of education is a part of the state's educational system, we think the members of such board are primarily local officers. They are primarily charged with the business administration of the county schools, *primarily endowed with county or municipal functions.*" (emphasis added). Accordingly, we will apply Dillon's Rule in this case for the reasons given above.

[11] By way of contrast, the statutes governing municipalities do confer broad powers for the benefit of the local education system. Tennessee Code Annotated section 6-19-101(30) authorizes cities under a city manager-commission charter to "do all other acts necessary to establish, maintain and operate a complete educational system within the city." See also Tenn. Code Ann. § 6-2-201(29) (stating the same with respect to mayor-aldermanic charters).

grants of authority because the General Assembly can hardly be expected to specify in minute detail the incidents of power conferred upon local governments. However, in finding the existence of an implied power, courts must remember that "[i]mplied powers do not exist independently of the grant of express powers[,] and the only function of an implied power is to aid in carrying into effect a power expressly granted." City of Flagstaff v. Associated Dairy Prods. Co., 206 P.2d 1041, 1043 (Ariz. 1953). Consequently, we examine closely the express powers of the county boards of education to determine what authority is also conferred as fairly implied from those powers.

Upon examination of the powers given to boards of education by section 49-2-203, we conclude that the power to arbitrate is fairly implied from the express power to contract in the first instance. Although no case from this Court has specifically held that the power to arbitrate a contract dispute is fairly implied from the power to contract itself, the veracity of this proposition cannot be reasonably doubted. As the Wisconsin Supreme Court has articulated the principle of law, "'It is well established that a city has the power to submit to arbitration any claim asserted by or against it, whether based on contract or tort, in the absence of a statutory prohibition. This power is based on the right to contract and the right to maintain and defend suits.'" City of Madison v. Frank Lloyd Wright Found., 122 N.W.2d 409, 416 (Wis. 1963) (quoting Power of a Municipal Corporation to Submit to Arbitration, 40 A.L.R. 1370, 1372 (1926)). Wisconsin is not alone in this view, and decisions in several states reflect similar holdings.[12]

This Court held long ago that "when the law gives the power and right to contract, the right to enforce such contract necessarily and as a matter of course follows . . . ." Uhl v. Board of Comm'rs, 74 Tenn. (6 Lea) 610, 614 (1881). The power to enforce that contract not only includes the authority to seek full judicial determination of the respective rights and obligations of the parties, but it must also necessarily include the ability to seek other reasonable avenues of dispute resolution, including settlement, mediation, and arbitration. It is not for this Court to decide which is the better course for a local government to pursue in resolving a contract dispute. Cf. Mitchell v. Garrett, 510 S.W.2d 894, 898 (Tenn. 1974) (stating that discretionary actions of an education board or superintendent are presumed to be reasonable and fair, "unless there is clear evidence to the contrary"). Consequently, because the legislature has not provided for a specific method to be used in resolving contract disputes, that decision is more properly made by those entrusted with ensuring the overall well-being of each county school system. See City of Va. Beach v. Hay, 518 S.E.2d 314, 316 (Va. 1999) ("Where the state legislature grants a local government the power to do something but does not specifically direct the method of implementing that power, the choice made by the local

_____

[12] See, e.g., City of Hartford v. American Arbitration Ass'n, 391 A.2d 137, 140 (Conn. 1978) ("The power of a municipal corporation to submit to arbitration is incident to its capacity to contract or make settlements or its power to sue and be sued."); Department of Health & Rehab. Servs. v. E.D.S. Fed. Corp., 631 So. 2d 353, 356 (Fla. Ct. App. 1994) ("[T]he power to contract implies the power to agree to settlement of disputes under the contract by arbitration.") (citation omitted); Dormitory Auth. v. Span Elec. Corp., 218 N.E.2d 693, 696-98 (N.Y. 1966) ("[T]he power to contract implies the power to assent to the settlement of disputes by means of arbitration."); see also City of Atlanta v. Brinderson Corp., 799 F.2d 1541, 1543 (11th Cir. 1986) ("Such a power [to arbitrate] is incident to its capacity to contract or make settlements, and its powers to sue and be sued.").

government as to how to implement the conferred power will be upheld as long as the method selected is reasonable.").

In response, and citing an unreported case from the Court of Appeals, SCI urges this Court to reject the notion that the power to arbitrate is fairly implied from the power to contract. In Chattanooga Area Regional Transit Authority v. Parks Construction Co.,[13] the intermediate court held that municipalities lack the implied power to arbitrate disputes, relying exclusively upon a federal decision that reached the same conclusion by applying Virginia law. See Schlosser Co. v. School Bd., 980 F.2d 253 (4th Cir. 1993). In Schlosser Co., the court held that a local school board under Virginia law has no authority to arbitrate a dispute arising out of a construction contract. The school board argued that the power to arbitrate is implied from the power to contract, and while the court noted that this argument was not "without force," it viewed the Virginia Public Procurement Act as reflecting a policy to withhold from local governments the power to arbitrate disputes. See 980 F.2d at 256. We note that even were we to agree with the general rationale used by the Schlosser Co. Court, we find no evidence of a similar policy in Tennessee to generally withhold arbitration from local governments as an avenue of dispute settlement. Consequently, to the extent that the Parks Construction Co. Court did not note this apparent distinction between the general policies of our state and that of Virginia, its persuasive value as an accurate reflection of Tennessee law is significantly weakened. Cf. Tenn. Sup. Ct. R. 4(H)(1).

In any event, given that the general rule of law is that the power to contract necessarily includes the power to settle disputes arising under that contract, one would reasonably expect the General Assembly to expressly withhold the ability to arbitrate disputes if that avenue of dispute resolution were not available. We can find no express prohibition in this regard, however, and we must therefore conclude that the power to arbitrate disputes is fairly implied from the power to contract in the first instance. Accordingly, we hold that the Board possessed the authority to arbitrate its construction contract dispute with SCI as a power fairly implied from its authority to contract with that party in the first instance. Having so concluded, it is unnecessary for us to inquire further as to whether the power to arbitrate is otherwise so essential to the declared objects and purposes of county boards of education that it must be within the scope of their authority.

## CONCLUSION

We hold that grants of power to local governments will continue to receive a strict, but reasonable, construction under the canon of construction known as Dillon's Rule. This rule of construction reflects the proper nature of local governmental power in this state, and its several broad exceptions significantly alleviate its shortcomings. We also hold that the Loudon County Board of Education possesses the authority to arbitrate construction contract disputes because such a power is fairly implied from the express power to enter into construction contracts. Accordingly, because the dispute in this case has already been resolved by means of final, binding arbitration, the Loudon

---

[13] See No. 03A01-9712-CH-00524, 1999 WL 76074 (Tenn. Ct. App. filed at Knoxville, Jan. 28, 1999).

-11-

County School Board is entitled to summary judgment. We reverse the judgment of the Court of Appeals and dismiss the case.

Costs of this appeal shall be assessed to the appellee, Southern Constructors, Inc.

_____
WILLIAM M. BARKER, JUSTICE