IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 15, 2002 Session

## RANDY ARNWINE v. UNION COUNTY BOARD OF EDUCATION, ET AL.

Appeal from the Chancery Court for Union County
No. 3884     Billy Joe White, Chancellor

FILED MAY 6, 2002

No. E2001-02719-COA-R3-CV

Randy Arnwine, an employee of the defendant Union County Board of Education ("the Board"), brought this declaratory judgment action against the Board and David F. Coppock, Director of Schools for Union County. Arnwine sought a declaration that his employment contract as "Assistant Superintendent" of the school system was valid and enforceable, and that the Board had violated that contract when it "demoted" him to a different position within the school system and reduced his salary beginning with the 2001-02 school year. The trial court held that the parties' four-year contract was valid and that Arnwine was entitled to receive his contractually-stipulated salary, plus any system-wide annual increases, for the four-year term of the contract. We find that the Board was without authority to enter into multi-year teacher employment contracts. Accordingly, we reverse the judgment of the trial court.[1]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Pamela L. Reeves and Jenny Coques Rogers, Knoxville, Tennessee, and Charles Cagle, Nashville, Tennessee, for the appellants, Union County Board of Education and David F. Coppock.

Lynn Tarpy and Thomas M. Leveille, Knoxville, Tennessee, for the appellee, Randy Arnwine.

**OPINION**

---

[1]Oral argument was heard in this case on April 15, 2002, at Knoxville Catholic High School, as part of this Court's C.A.S.E. (**C**ourt of App**e**als **A**ffecting **S**tudent **E**ducation) project.

# I. *Background*

Prior to the events leading to the dispute in this case, Arnwine had been employed by the Board, first as a classroom teacher and later as a principal. During the 1999-2000 school term, he was employed by the Board as its Personnel, Safety and Transportation Supervisor. At the Board's July 1, 2000, meeting, Fred Simmons, the then-Chairman of the Board, made a motion to add "assistant superintendent" to Arnwine's job title. The motion provided that Arnwine's term as Assistant Superintendent would be for the same four-year period as that of Director Coppock, but with no additional pay. The minutes of that meeting regarding the motion read as follows:

> Motion Simmons, seconded Williams under Randy Arnwine's title add assistant superintendent, for David [Coppock]'s term beginning September 1, 2000, along with his other titles with no extra pay.
>
> Board members requested a list of duties and job description.
> Motion Carried.
>
> Mr. Warwick voted - No.

As can be seen, the motion, whatever its import,[2] was agreed to.

After the July 1, 2000, Board meeting, Arnwine, at Simmons' direction, prepared a written contract of employment. The contract, dated August 26, 2000, provides that Arnwine's employment as Assistant Superintendent "shall commence on September 1, 2000, and continue for an initial four (4) year term, ending August 31, 2004." The document was signed by Simmons on August 26, 2000. No other Board member signed the document, and it is undisputed that no discussion took place at any Board meeting regarding a written contract with Arnwine.

When Simmons signed the contract, he was preparing to leave office on September 1, 2000, as a consequence of having been defeated in the August, 2000, school board election.

Following the execution of the contract, Coppock sent a letter to Arnwine on September 1, 2000, which states, in relevant part, as follows:

> This letter is to inform you of your transfer from your position as Transportation Supervisor and other assigned duties in the Central Office of the Union County Board of Education to the position of In-School Suspension Teacher at Horace Maynard Middle School. The transfer is effective immediately.

---

[2]The parties sharply differ as to what the Board intended by its passage of the motion. We do not find it necessary to resolve this dispute.

\* \* \*

> Your current rate of pay will be maintained for the 2000-2001 school
> year. Beginning with the 2001-2002 school year, your pay will be
> adjusted consistent with your assignment within the system.

Arnwine filed his complaint for declaratory judgment on November 14, 2000, asking the court to find and declare that his four-year contract between himself and the Board was valid and enforceable. Arnwine further requested that the court declare his "demotion" invalid, based upon his contract and the relevant Tennessee statutes. Following a bench trial, the court below found that the July 1, 2000, minutes of the Board meeting constituted a valid four-year contract with Arnwine, and that, although Coppock and the Board had the authority to transfer Arnwine to another position within the system, they could not reduce his salary during the four-year term of his contract.

The Board appeals, arguing that the board minutes do not constitute a contract; that those minutes did not authorize Simmons to enter into a contract with Arnwine, and certainly not a multi-year contract; and that, in any event, boards of education in Tennessee lack statutory authority to enter into multi-year employment contracts with teachers. Because we agree with the Board's last argument, we do not find it necessary to reach its other two issues.

## II. *Standard of Review*

In this non-jury case, our review is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Tenn.R.App.P. 13(d). We must honor that presumption unless we find that the evidence preponderates against the trial court's factual findings. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are not accorded the same deference. **Campbell v. Florida Steel Corp.**, 919 S.W.2d 26, 35 (Tenn.1996). "Any question regarding the scope of local governmental authority is a question of law, and as such, we review the issue in this case under a pure *de novo* standard of review. . .," *i.e.*, with no presumption of correctness. **Southern Constructors, Inc. v. Loudon County Bd. of Educ**., 58 S.W.3d 706, 710 (Tenn. 2001).

## III. *Discussion*

Our discussion regarding the scope of authority of a local governmental entity must begin with the recognition that

> local governments have never possessed the inherent right to
> autonomous self-government, and all local governmental authority
> "has always been interpreted as a matter of constitutional entitlement
> or legislative delegation of authority." **Civil Serv. Merit Bd. v.
> Burson**, 816 S.W.2d 725, 727 (Tenn.1991) (citation omitted).

-3-

Plainly stated, then, without some form of constitutional authorization, local governments in Tennessee possess only those powers and authority as the General Assembly has deemed appropriate to confer upon them.

*Southern Constructors*, 58 S.W.3d 706, 711-12 (Tenn. 2001).

In the recent *Southern Constructors* case, the Tennessee Supreme Court, after an extensive review and discussion of the canon of statutory construction known as "Dillon's Rule,"[3] held specifically that the canon was applicable to the issue of the authority of a *county board of education*. Dillon's Rule was articulated by the *Southern Constructors* court as follows:

In determining the question now made, it must be taken for settled law, that a municipal corporation possesses and can exercise the following powers and no others:  First, those granted in express words;  second, those necessarily implied or necessarily incident to the powers expressly granted;  third, those absolutely essential to the declared objects and purposes of the corporation--not simply convenient, but indispensable;  fourth, any fair doubt as to the existence of a power is resolved by the courts against the corporation--against the existence of the power.

*Id*. at 710 (quoting from *Merriam v. Moody's Ex'r*, 25 Iowa 163, 170 (1868).

In order to determine whether the legislature has granted the Board the authority to enter into multi-year contracts with teachers, we must first examine the statutes governing education, T.C.A. §49-1-101 *et seq.*, to determine if that authority has been granted "in express words." In doing so, we must keep in mind the general principle that "courts do not interpret statutes in isolation, but are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose." *Kradel v. Piper Industries, Inc.*, 60 S.W.3d 744, 750 (Tenn.2001) (internal quotations omitted); *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995).

It is apparent that the legislature has granted local boards of education the power to make *written contracts* with teachers. T.C.A. §49-2-203(a)(1) (Supp. 2001) provides that

[i]t is the duty of the local board of education to: (1) Elect, upon the recommendation of the superintendent, teachers who have attained or

---

[3]The rule is named for John F. Dillon, who was Chief Justice of the Iowa Supreme Court when the rule was first pronounced in an opinion authored by him in the case of *Merriam v. Moody's Ex'r*, 25 Iowa 163 (1868).

are eligible for tenure and fix the salaries of and make written contracts which such teachers[.]

In addition, T.C.A. §49-5-408 (1996) provides that "[a]ll teachers must make a written contract with the superintendent or board of education at a fixed salary per month before entering upon their duties in any public elementary or high school." However, our review of the statutory scheme pertaining to education in general demonstrates a clear intent on the part of the legislature that the employment of teachers is to be accomplished on a year-to-year basis. T.C.A. § 49-5-409 (Supp. 2001) provides the following with respect to the dismissal or failure of re-election of teachers:

> (a) Teachers in service and under control of the public elementary and high schools of Tennessee shall continue in such service until they have received written notice, from their board of education or superintendent, as appropriate, of their dismissal or failure of reelection.
>
> \*　　　　\*　　　　\*
>
> (b)(2) The notice must be received prior to April 15 to be applicable to the next succeeding school year; provided, that the board of education may transfer any teacher from one (1) position to another at its option.

T.C.A. §49-5-401 (Supp. 2001), cited by the Board in support of its argument that it lacked authority to enter into a multi-year employment contract with Arnwine, states:

> (a) All educators and other school personnel *to be employed for the following school year* shall be assigned to the several schools by May 15 next preceding *the school year for which such persons are employed.*
>
> \*　　　　\*　　　　\*
>
> (c) The various superintendents shall on or before June 1 next following the election and assignment of such personnel, file with the commissioner of education, on forms prescribed by the commissioner, a complete list of all *personnel employed for the ensuing school year.*

(Emphasis added). Moreover, T.C.A. §49-5-402 (Supp. 2001) provides, in relevant part, as follows:

(a) After the election of teachers, as provided in this title, the superintendent shall establish the salary rating of each person employed as teacher or principal-teacher, . . .using for this purpose the established training and experience of such school personnel and the respective state salary schedule for the *school year*, as prescribed by the state board of education and approved by the commissioner of education.

(b) The salary rating and other information as called for on forms prescribed by the commissioner shall be filed with the commissioner on or before December 1 *of the school year for which such personnel is elected.*

(Emphasis added). This statute requires a superintendent to consider "the established training and experience of such school personnel and the respective state salary schedule" for *each school year*, and set each teacher's salary accordingly.

As the above-cited statutes make clear, the "school year" time frame is a concept central to the statutory scheme regarding teacher employment in the school setting. The statutes regarding teachers in the "career ladder" program further support this conclusion. *See* T.C.A. §49-5-5206(a) (1996) ("Any duly certified career level I teacher shall be employed for ten (10) months."); T.C.A. §49-5-5207(a) (1996) ("Upon receiving a career level II teacher certificate, a teacher shall choose either a ten-month or eleven-month contract."); T.C.A. §49-5-5208(a)(2) (1996) ("Upon receiving a career level III certificate, a teacher shall choose a ten (10), eleven (11), or twelve-month contract.").

Our examination of the statutes pertaining to education reveals no express grant of authority to local school boards to enter into multi-year teacher employment contracts. We note, however, that T.C.A. §49-2-203(a)(15)(A) (Supp. 2001) does grant school boards authority to "employ a *director of schools* under a written contract of up to four (4) years' duration. . ." (Emphasis added). We also note that T.C.A. § 49-2-303(a)(1) (1996) provides that "[t]he employment contract with each principal...shall not exceed the contract term of the current superintendent." Our search has not revealed a similar provision with respect to the employment of teachers.

Arnwine cites T.C.A. §7-51-903 (1998) in support of his contention that county boards of education are empowered to enter into long-term employment contracts. That statute provides:

Except as otherwise authorized or provided by law, municipalities are hereby authorized to enter into long-term contracts for such period or duration as the municipality may determine for any purpose for which short-term contracts not extending beyond the term of the members of the governing body could be entered. . .

Arnwine cites no authority suggesting that T.C.A. §7-51-903 is applicable to county boards of education. We also note that the cited statute is not a part of the statutes pertaining to education, *i.e.*, T.C.A. § 49-1-101, *et seq.* We conclude that T.C.A. § 7-51-903 does not extend to county boards of education. Accordingly, we hold that T.C.A. § 7-51-903 does not constitute an express grant of authority to county boards of education to enter into teacher employment contracts of a duration longer than one year.

Having found no *express authority* for the action taken by the Board in this case, we turn next to the second prong of Dillon's Rule: whether the authority to enter into multi-year teacher employment contracts is "necessarily implied or necessarily incident to the powers expressly granted." As previously noted, the statutes regarding teacher employment revolve around the concept of the school year, and suggest that the legislature intended local school boards to conduct a yearly examination, review, and re-election of teachers employed in the school system. Nothing in this statutory scheme indicates that the power to enter into multi-year teacher employment contracts is necessarily implied or incident to any power expressly granted to boards of education. In fact, the implication of the statutory scheme is to the contrary.

The third inquiry under Dillon's Rule is whether the power at issue is "absolutely essential to the declared objects and purposes of the corporation--not simply convenient, but indispensable." *Southern Constructors*, 58 S.W.3d at 710. Our review of the statutes dealing with education in general, and teacher employment in particular, compels us to answer that question in the negative.

The fourth element of Dillon's Rule – "any fair doubt as to the existence of a power is resolved by the courts...against the existence of the power" – clearly does not work in Arnwine's favor. This is because we find *no* doubt on the "power" issue presented by this case.

## IV. *Conclusion*

We conclude that the Board was without statutory authority to enter into a multi-year employment contract with Arnwine. Thus, we find and hold that the contract at issue in this case is neither valid nor enforceable. The other issues raised by the defendants are pretermitted. The judgment of the trial court is reversed. This case is remanded for the entry of an appropriate order dismissing Arnwine's suit at his cost. Costs on appeal are also taxed to Arnwine.

_____
CHARLES D. SUSANO, JR., JUDGE