IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, November 24, 2004

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. ABB, IN THE MATTER OF: LJB, Jr., d/o/b 12/05/1997 and EJB, d/o/b 02/26/1999, Children Under 18 Years of Age

### Direct Appeal from the Juvenile Court for Hamilton County
### Nos. 188,611 and 188,612    Hon. Suzanne Bailey, Judge

### No. E2004-01306-COA-R3-PT  - FILED JANUARY 13, 2005

In this action to terminate the parental rights of the mother, ABB, to LJB, Jr., and EJB, the Juvenile Court ordered ABB's rights terminated, and the mother has appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Robert D. Bradshaw, Guardian ad Litem, Chattanooga, Tennessee

Michele L. Coffman, Chattanooga, Tennessee, for Appellant.

Paul G. Summers, Attorney General and Reporter, and
Juan G. Villasenor, Assistant Attorney General, Nashville, Tennessee, for Appellee.

### OPINION

The mother has a long history of alcohol and drug abuse dating from her teenage years. Initially, due to the mother's addiction, she agreed with her sister to give custody of the two children to the sister to care for them and with the concurrence of the Department of Children's Services, the sister was awarded legal custody of the children. On June 23, the parties agreed and

developed a permanency plan with identical requirements for both children. Under the plan, ABB was required to take parenting classes at a DCS approved facility and provide proof of completion, attend children's counseling as requested by the treatment team, and participate in a DCS approved money management program. Additionally, she was required to get individual counseling to address domestic violence issues, pay child support in accordance with the child support laws, complete a Council for Alcohol and Drug Abuse Services (CADAS) program, and follow its recommendations which include AA and NA meetings.

On December 22, 2003, the DCS filed a Petition to terminate the parental rights of ABB, and her husband, LJB.[1] The trial on this Petition was held on April 19, 2004 and May 3, 2004. Following trial, the Juvenile Court entered Judgment terminating ABB's parental rights to her children. The Trial Court in its ruling said:

> . . . The mother is either unwilling or unable to provide a stable, safe and suitable home for the subject children,. . . . At the time of the petition, the mother again began treatment for her drug addiction. . . . The mother failed to substantially comply with her permanency plan responsibilities, or to otherwise remedy the conditions which cause the children to remain in foster care.

The Court also found the mother had abandoned her children by wilfully failing to support the children or make reasonable payments toward their support, and the Court, in ruling that defendant had failed to comply in a substantial manner with the permanency plan said:

> . . . Specifically, Defendant failed to follow all recommendations made as a result of her A&D assessment; failed to complete her treatment through CADAS, follow recommendations of aftercare program including regular attendance at AA or NA meetings; . . .

Further, the Court determined that there was clear and convincing evidence that it was in the children's best interest that the mother's parental rights be terminated.

The mother has appealed and argues there is no clear and convincing evidence that warrants the termination of her parental rights under statutory abandonment or for failure to substantially comply with the permanency plan. Finally, she argues there is no clear and convincing evidence to support the finding that termination would be in the best interest of the children.

The findings of the Trial Judge are accorded the presumption of correctness unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). *Bogan v. Bogan*, 60 S.W.3d 721-727 (Tenn. 2001). This Court's review of questions of law is conducted under a *de novo* standard of review, with no deference to the conclusions of law made by the lower court. *Southern Constructors, Inc., v. Loudon County Bd. Of Education*, 58 S.W.3d 706-710 (Tenn. 2001).

---

[1]The parental rights of the father were terminated, and he is not a party to this appeal.

A parent's rights may be terminated based upon several statutory grounds set forth in Tenn. Code Ann. § 36-1-113, and the Juvenile Court is required to find clear and convincing evidence that a statutory ground for termination has been satisfied in order to terminate the parent's rights. *Id.* Clear and convincing evidence supporting any single ground will support a termination order. *See, In re: Valentine*, 79 S.W.3d 539-546 (Tenn. 2002).

The mother argues the record shows that she has remedied the circumstances that caused her children to be removed from her custody. She testified that she had provided two clean drug screens and had enrolled in a program to help her learn to better handle her finances, and was regularly visiting with her children. She admitted to having a relapse on November 2, 2003, but has obtained support for her drug addiction through Alcoholics Anonymous, which she testified she attends regularly. She further testified that by the time of the hearing she had completed her anger management and financial management counselings, parental assessment parenting classes, and had procured an apartment adequate for her and the children and was currently employed.

DCS conceded that after the Petition to Terminate Parental Rights was filed, the mother had complied with some of the requirements of the permanency plan, but argued that ABB's efforts came "too little, too late" to constitute substantial compliance.

We find from our review of the evidence that there is clear and convincing evidence to support the Trial Court's finding that the mother failed to substantially comply with the permanency plan. The key factor establishing substantial non-compliance is her failure to complete the CADAS program. She was admitted to the CADAS program on December 8, 2003, and was seeking to get into the Family Way Program, which is one of CADAS's halfway houses, whose mission is helping women who have substance abuse problems to regain custody of their children. The assistant manager of the facility testified that the mother "started off very positively and was very interested in going into the Family Way Program". But soon, the witness testified, she noticed the mother's motivation began to wain and the mother said on several occasions that she wasn't sure that she wanted to enter the program, and she inevitably dropped out of the program. The witness testified that had the mother's motivation continued, she would have been able to move into one of their apartments with her children within a short period of time, and the program had no requirements that would have prevented her from coming into the program. In our view, this was an essential requirement of the permanency plan, and had the mother continued successfully, she could have demonstrated that she could properly care for her handicapped children and thereby regained custody.

The record contains the report of a psychologist who performed a parenting assessment on February 11 and March 24, 2004. The psychologist reported that the mother was poly-substance dependent and he diagnosed the mother as suffering from recurrent major depression, and made recommendations for treatment. He cautioned that she would have to be continuously monitored, and be under the care of a treating professional "over a period of time before consideration of her regaining custody of her children". He concluded that the mother's becoming "financially and environmentally stable will be very important".

We conclude that the mother's refusal to remain in the CADAS program whereby she could have regained custody of her children in a controlled environment, clearly supports the Trial Court's conclusion that there was clear and convincing evidence of substantial non-compliance with the permanency plan, which standing alone, is an adequate basis to terminate the mother's parental rights.

The Trial Court, in concluding that it was in the best interest of the children to terminate the mother's parental rights, observed:

> But we've got children who have such special needs that they have to have somebody who's there one hundred percent, somebody who doesn't have the struggles that you have, who's likely to face this, seeing them again, relapse again. They've got to have somebody there all the time with them.

> With your history of being manic depressive; with the medications you've had, your history of being in Moccasin Bend, your history of this drug addiction, all the struggles that you have right now, I cannot find it's in the best interest of these children for your rights not to be terminated.

The factors to be taken into account by the Trial Court are set forth in Tenn. Code Ann. § 36-1-113(c)(2). When these factors are applied to the evidence in the record, it is clear that it is in the best interest of the children to terminate the mother's parental rights. The mother conceded in her testimony that the children reside in a "good place" with her three sisters.

The Judgment of the Juvenile Court is affirmed and the cause remanded to the Juvenile Court. The costs on appeal are assessed to ABB.

_____
HERSCHEL PICKENS FRANKS, P.J.

-4-