IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs March 2, 2006

## ANDREW BLAKE MOOREHEAD
### v.
## STACY CHRISTINE FUGITT (MOOREHEAD)

**An Appeal from the Chancery Court for Henderson County**
**No. 16216     James F. Butler, Chancellor**

---

**No. W2005-02711-COA-R3-CV - Filed August 11, 2006**

---

This is a post-divorce case involving child custody. The parties divorced with an agreed parenting plan for their minor child in which the parties shared equally in residential parenting time and decision-making. When both parties remarried and the child approached school age, the father filed a petition seeking to have the child reside primarily with him. The mother then filed a similar petition. After a comparative fitness analysis, the trial court designated the mother as the primary residential parent. The father now appeals. We affirm, finding that the evidence does not preponderate against the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., joined. DAVID R. FARMER, J., dissented.

Jennifer Twyman King, Jackson, Tennessee, for the Respondent/Appellant, Andrew Blake Moorehead.

Stacy Christine Fugitt, *pro se* (no brief filed).

### OPINION

Petitioner/Appellant Andrew Blake Moorehead ("Father") and Respondent/Appellee Stacy Christine Fugitt (Moorehead) ("Mother") were married October 20, 2000. A daughter, Aislinn Drew Moorehead ("Drew"), was born to the marriage on June 6, 2001. The family resided in Jackson, Tennessee. In 2002, Father filed a petition for divorce alleging irreconcilable differences and noted that the parties had entered into a marital dissolution agreement, including an agreed parenting plan.

A final decree of divorce was entered October 17, 2002, granting a divorce on the grounds of irreconcilable differences and restoring Mother's name to Fugitt. The trial court approved the marital dissolution agreement with the agreed permanent parenting plan.

The parenting plan divided virtually everything equally. The parties agreed to alternate calendar weeks and to equally divide major holidays and the child's birthday. Major decisions were to be made jointly, and neither parent would pay child support to the other. The parenting plan provided that Father would be responsible for paying costs of continuing education, medical insurance, and uncovered medical expenses. The form for the agreed parenting plan also included the following provision:

> IV. DESIGNATION SOLELY FOR STATE AND FEDERAL STATUTES
> The child(ren) named in this parenting plan are scheduled to reside the majority of the time with the [ ] Mother [X] Father, as primary residential parent. The parent is so designated solely for purposes of any other state and federal statutes which require a designation or determination of parental responsibility. If the parents are joint decision makers as listed in Section II. for purposes of obtaining health insurance, they shall be considered joint custodians. THIS DESIGNATION SHALL NOT AFFECT EITHER PARENT'S RIGHTS AND RESPONSIBILITIES UNDER THIS PARENTING PLAN.

After the divorce, Mother and Father co-parented reasonably well for a period of time, sharing equally in residential parenting time as set forth in the parenting plan. Eventually, both remarried; Mother married James Horn,[1] and Father married Rebecca Moorehead. Mother was a stay-at-home mother for Drew and her daughter Sonny from a prior relationship; she later had an infant, Shawn, with Mr. Horn. Father's new wife worked outside the home, and while Drew resided with Father, she attended a daycare owned by her grandmother, Father's mother.

At some point, Mother began traveling to Iuka, Mississippi, to care for her ailing father. Drew accompanied her. To accommodate this, the parties informally agreed to modify the parenting schedule, and Drew began to stay two weeks at a time with each parent.

Predictably, the co-parenting relationship between the parties changed after both remarried and their child approached school age. Disputes arose which the parties were unable to resolve amicably. Eventually Mother and her husband relocated to Mississippi, a little over sixty miles from Jackson, Tennessee.

On January 18, 2005, Father filed a motion to modify the permanent parenting plan, seeking to have Drew reside primarily with him. Father alleged that the parties' parenting plan designated him as the primary residential parent, but noted that the plan provides for Drew to reside alternate weeks with the parties. He contended that Mother was unemployed and unable to provide a stable

---

[1]After her marriage to Mr. Horn, Mother retained the name Fugitt.

home environment for the minor child. He noted that Drew could enroll in school at age five. He asserted that, given the fact that the parties were residing in different locations, the agreed parenting plan would not be feasible after Drew was enrolled in school. Father's proposed parenting plan, filed with the motion, proposed that the child reside with him during the week and with Mother on alternate weekends.

Mother filed a response and a counter-petition to modify the parenting plan, seeking to be designated as the primary residential parent with reasonable parenting time for Father. Mother noted that she was unrepresented when the parties agreed on a parenting plan, and acknowledged that it included the provision stating that Father was designated the primary residential parent "solely for purposes of any other state and federal statutes which require a designation. . . ." She noted that, under the parenting plan, the parties were joint decision makers, neither paid child support to the other, and they shared equally parenting responsibilities and residential parenting time. She alleged that there was a material change in circumstances and asked the trial court to adopt her proposed parenting plan. Mother also sought payment of child support in accordance with the Guidelines.

Mediation proved unsuccessful, and the matter proceeded to trial. Mother was unrepresented at the trial. Both parties testified, as well as Father's mother and Father's wife. Father testified about his employment and his home, and Mother testified that she was a stay-at-home mother and that she and her children were supported by her husband, Mr. Horn. Both parties testified about their disputes, including disagreement over where Drew would attend school. Both Mother and Father testified that the agreed parenting plan was no longer workable in light of Mother's relocation and Drew's impending enrollment in school.

At the conclusion of the testimony, the trial judge stated:

[The parties] have the parenting plan whereby they agreed that they'd each have half the time, one week and one week. There's no primary residential parent set forth in this plan. There's no support set. The parenting time is set at one week and one week. The Court is going to consider this as an initial custody setting, rather than a change of custody, because it's not really a change in custody. This will be the setting of initial custody where one will be the primary residential parent. The other will be the alternate residential parent. This will be necessary because of the fact that the child will be going to school soon. She needs to live at one place. She can't live here and there and be back and forth.

The Court has to examine the evidence we have for what we call a comparative fitness analysis, and then decide how to best provide for this child, this particular child, with these parents . . . .

Father made no objection to the trial judge's statement that he would consider it as an initial custody decision and perform a comparative fitness analysis. The trial judge then took the matter under advisement.

Subsequently, the trial judge issued an extensive letter ruling. Consistent with his remarks at the conclusion of the trial, the letter stated:

> In this case, neither party had the designation of Primary Residential Parent at their divorce. Everything was approximately equal and there were no support provisions. It is the Court's opinion that the law controlling this case is that of an initial custody award and that a material change of circumstances is not necessary to make a ruling in this case.

The trial court then engaged in a detailed comparative fitness analysis, finding both parents to be fit and loving parents with a stable, appropriate home for the child. The trial judge noted that Drew shared Mother's home with her half-siblings and would likely be adversely affected by removing her from that environment. He also found that, while Father's arrangements for daycare for Drew were suitable, Mother's arrangement to stay at home with the children was more beneficial. Describing this as "an extremely close case," the trial judge designated Mother as the primary residential parent, with standard alternate residential parenting time for Father.

The trial court subsequently entered an order designating Mother as the primary residential parent for the minor child and Father as the alternate residential parent. A supplemental order was entered requiring Father to pay child support in the amount of $355 per month. From this order, Father now appeals.

On appeal, Father contends that the trial court erred in finding that neither parent was designated as the primary residential parent and, therefore, the trial court erred in applying the comparative fitness test without first finding a material change of circumstances, and in designating Mother as primary residential parent. Father did not appeal the award of child support. Mother did not file a brief on appeal.

Our review of a trial court's findings of fact is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. T.R.A.P.13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's conclusions of law *de novo*. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Absent clear, concrete and convincing evidence to the contrary, appellate courts are not inclined to second guess a trial court's determination of credibility. *See Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169, 170 (Tenn. 1978); *Buss-Flinn v. Flinn*, 121 S.W.3d 383, 389 (Tenn. Ct. App. 2003). "Trial courts must be able to exercise broad discretion in [custody and visitation] matters, but they must still base their decisions on the proof and upon the appropriate application of the applicable principles of law." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). Therefore, we review the trial court's determinations regarding comparative fitness *de novo*, presuming its determination to be correct, unless the evidence preponderates otherwise. *Id.*

On appeal, Father argues that the agreed parenting plan designates him as the primary residential parent, and that the trial court was therefore required to find a material change in

circumstances before conducting a comparative fitness analysis pursuant to Tennessee Code Annotated § 36-6-106. Father then argues that, after a finding of a material change in circumstances, consideration of the factors in the comparative fitness analysis indicates that the trial court erred in designating Mother as the primary residential parent.

Since the agreed parenting plan divides the parenting responsibilities and residential parenting time equally, in asserting that the plan designates him as the primary residential parent, Father presumably relies on the provision in the parenting plan form which states that one parent is designated as primary residential parent "solely for purposes of any other state and federal statutes which require a designation. . . ." The provision includes an explicit disclaimer in capitalized letters that the designation "SHALL NOT AFFECT EITHER PARENT'S RIGHTS AND RESPONSIBILITIES UNDER THIS PARENTING PLAN."

Even if this paragraph were deemed a designation of primary residential parent for purposes of this appeal, it is undisputed that the parenting plan as a whole provides that parenting time and responsibilities are to be evenly divided and parenting decisions are to be jointly made. The parties' testimony confirmed that Mother and Father in fact parented as joint custodians, as set out in the parenting plan. It is clear from a review of the parenting plan overall and the course of dealing between the parties that they did not intend that either parent be designated primary residential parent for this purpose. Joint custody is the real status quo that the trial judge recognized, and Father did not dispute it when the trial judge made this observation at the conclusion of the trial.

Moreover, if a material change in circumstances were required, the parties agreed that such a change existed. Both Mother and Father asserted in their cross-petitions and in their testimony that the agreed parenting plan, whereby residential parenting time was split evenly, was no longer workable in light of Mother's move to Mississippi and the child's impending enrollment in school. Both agreed that joint custody should not continue and that modification of the parenting plan was in their child's best interest. Reversing the trial court to determine (a) whether there has been a material change in circumstances, and (b) whether modification of the parenting plan is in the child's best interest would only require that the trial court make formal findings of fact that are undisputed, and then re-do the comparative fitness analysis that has already been done.

The crux of Father's argument on appeal is that the trial court erred in designating Mother as primary residential parent. In his ruling, the trial judge engaged in a painstaking analysis of each factor to be considered, accurately describing it as an extremely close case. After a careful review of the record, we cannot conclude that the trial court erred in designating Mother as the primary residential parent.

The decision of the trial court is affirmed. Costs of this appeal are assessed against Appellant Andrew Blake Moorehead, and his surety, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE