# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 11, 2008 Session

## PAUL DAVID FRANKLIN v. SHERRY A. B. FRANKLIN, ET AL.

**Appeal from the Chancery Court for Monroe County**
**No. 14575     Jerri S. Bryant, Chancellor**

---

### No. E2006-2716-COA-R3-PT - FILED APRIL 15, 2008

---

After nineteen years of marriage, Paul David Franklin ("Husband") sued Sherry A.B. Franklin ("Wife") for divorce. Gary Freeman ("Freeman") was granted leave to intervene in the suit to establish the paternity of the younger of the two minor children ("J.A.F.") born during the Franklins' marriage. After a trial, the Trial court entered a Final Decree of Divorce, *inter alia*, granting Husband a divorce; holding that Freeman is the biological father of J.A.F., but that Husband is the legal father; distributing the marital property; and awarding primary residential custody of both minor children to Husband with Wife to have co-parenting time. Wife filed a motion to alter or amend. The Trial Court entered an order altering its decision in light of the then just released Tennessee Supreme Court opinion in *In Re: T.K.Y.*, and terminating Freeman's parental rights to J.A.F. on the grounds found in Tenn. Code Ann. § 36-1-113(g)(1). Wife and Freeman appeal to this Court raising issues regarding the termination of Freeman's parental rights to J.A.F., the custody of J.A.F., and distribution of the marital property. We reverse the termination of Freeman's parental rights to J.A.F., reverse the Trial Court's order granting custody of J.A.F. to Husband, vacate that portion of the Trial Court's order distributing the marital home, and remand this case to the Trial Court to effectuate the custody transfer of J.A.F. to Wife and for an overall equitable distribution of the marital property in light of our decision in this case.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in part; Reversed, in part; Vacated, in part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and NORMA MCGEE OGLE, SP.J., joined.

Barry K. Maxwell, Madisonville, Tennessee for the Appellants, Sherry A. B. Franklin and Gary Freeman.

Randy G. Rogers, Athens, Tennessee for the Appellee, Paul David Franklin.

# OPINION

## Background

Husband and Wife were married in 1985. Two children were born during this marriage. The older child reached the age of majority during the pendency of this case. As such, there are no issues on appeal regarding the older child. There are, however, several issues on appeal involving the younger child, J.A.F., who was born in 1998.

Husband sued Wife for divorce in 2004. Freeman moved for leave to intervene in the suit claiming that he was J.A.F.'s biological father. The Trial Court granted Freeman leave to intervene to establish the paternity of J.A.F. The case was tried without a jury.

At trial, Wife admitted to having an affair with Freeman since 1993, and claimed that Freeman is J.A.F.'s biological father. Both Wife and Freeman testified that they have had a sexual relationship since 1992 or 1993. At the time J.A.F. was born, and during the first few years of J.A.F.'s life, Freeman was married to another woman. Freeman and his wife were divorced approximately two years before the trial of this case. Freeman testified at trial that he did not try to establish his parental rights to J.A.F. until after Husband sued Wife for divorce because it was: "Kindly hard to do it. She was married; I was married. It's just a bad situation." Genetic testing revealed that Freeman had a 99.9956% probability of paternity of J.A.F. Wife testified that she has never told J.A.F. that Freeman is his father.

Freeman testified that he was at the hospital the day J.A.F. was born to see him. Freeman further testified that he saw J.A.F. every week until J.A.F. was five years old, and that he took J.A.F. and Wife out to eat or to other places mostly in Knoxville or Chattanooga. Freeman testified that he stopped seeing J.A.F. regularly after J.A.F. turned five years old because Freeman was: "Just afraid he would talk, you know, and it would get some trouble started that - - tried to avoid." Freeman also testified that he was seeing J.A.F. on a regular basis until the Trial Court entered an order directing that Wife not have J.A.F. around any other men including Freeman. Wife testified that Freeman has had a relationship with J.A.F. and has seen him regularly from the time of J.A.F.'s birth until the Trial Court entered the order prohibiting Wife from having J.A.F. around Freeman. Wife also testified that J.A.F. uses the speed dial on Wife's cell phone and calls Freeman of his own volition "[p]robably three times a week, four maybe."

Freeman testified that he paid Wife $50 per week for J.A.F., mostly in cash, from the time J.A.F. was born until J.A.F. started school. Wife testified that she used the cash that Freeman gave her for J.A.F. to pay the babysitter who kept J.A.F. while Wife worked. Freeman produced copies of three checks he had written in 2004, one for a hospital bill for J.A.F. and two made out to Wife with a notation of J.A.F. on them. Freeman testified that he still gives Wife money for J.A.F. "whatever she needs...." In addition, Freeman testified that he has purchased toys for J.A.F. and specifically that he had purchased a trampoline for J.A.F.'s last birthday. In addition, Freeman testified that he gave J.A.F. a cow and that cow has had calves which belong to J.A.F. Wife also

testified that one day during the fall of 2005, she and J.A.F. ran into Freeman at a Wal-Mart and that Freeman bought a BB gun for J.A.F. at that time. Additionally, Wife testified that Freeman fixed J.A.F.'s bicycle and gave J.A.F. two fish plaques, among other things.

After a trial, the Trial Court entered a Final Decree of Divorce, *inter alia*, granting Husband a divorce; holding that Freeman is the biological father of J.A.F., but that Husband is the legal father and further holding that Freeman has no legal rights or obligations to J.A.F. including the right of visitation; distributing the marital property; and awarding primary residential custody of the two minor children to Husband with Wife to have co-parenting time. In the Final Decree of Divorce, the Trial Court specifically found and held:

29. It is further Ordered that after tallying the various values of property awarded to each party listed in this cause, that the plaintiff, Paul David Franklin, has received $33,703.00 in the value of division of property and the defendant, Sherry Franklin, receiving (sic) $4,000.00 of value.

30. It is further Ordered that the parties (sic) real estate referred to as the rental or business building in Vonore, Tennessee shall be sold by the parties and that the house in Englewood shall be sold.… The aforesaid properties shall be sold first and the proceeds from the sale, after paying expenses of sale, commissions to real estate agents and any outstanding new real estate taxes, shall be utilized to adjust the equities set out herein with regard to the division of personal property. Any remaining equity shall be divided equally between the parties. After the above listed properties in Vonore and Englewood are sold, the parties shall resolve their division of equity in their marital residence located in Madisonville, Tennessee, ….

a) The Plaintiff, Paul Franklin, shall be allowed to purchase the defendant's interest in said residential real estate for the sum of one-half (1/2) of the value affixed to said real estate by the Court of $45,000.00 ….

b) If the plaintiff, Paul Franklin, is not able to purchase the defendant, Sherry Franklin's, interest in said real estate, then the defendant shall have the right to give the plaintiff notice [of her intent to purchase] ….

c) If neither party purchases the interest of the other party pursuant to this Final Decree, then the home shall be listed and sold,….

Wife filed a Motion to Alter or Amend and, after the Supreme Court released its Opinion in *In Re: T.K.Y.*, Wife and Freeman filed a Motion to Alter or Amend Judgment, and Motion for Relief from Judgment. After a hearing, the Trial Court entered an order on November 20, 2006, terminating Freeman's parental rights to J.A.F. and finding and holding, *inter alia*:

[Husband] was the ONLY father this child ever knew. He is the moral, if not the legal, father of this child.

This court finds Mr. Freeman not credible as a witness in this matter. This court further finds that within four months prior to filing this case, and even within

-3-

the last three years preceding this case, there is no proof in the record that Mr. Freeman spent any amount of time with or money for the child. Any past support or time with the child was token and not intended to be assertive of his parental rights, nor accepting of his responsibility.

Wife and Freeman appeal to this Court.

## Discussion

Although not stated exactly as such, Wife and Freeman raise five issues on appeal: 1) whether the Trial Court erred in awarding Husband primary residential custody of J.A.F. after finding that Freeman was J.A.F.'s biological father; 2) whether the Trial Court erred in terminating Freeman's parental rights to J.A.F.; 3) whether the Trial Court erred in failing to appoint a guardian ad litem for J.A.F. in regard to the termination of Freeman's parental rights; 4) whether the Trial Court erred in its division of the marital assets; and, 5) whether the Trial Court erred in awarding Husband the right to purchase the marital home.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in awarding Husband primary residential custody of J.A.F. after finding that Freeman is the biological father of J.A.F. As our Supreme Court explained in *In Re: T.K.Y.*:

> [Tenn. Code Ann. § 36-1-117] provides that once paternity has been established, the biological father becomes the legal father, and his rights may only be terminated as "as (sic) provided by § 36-1-113 or otherwise provided by law." *Id*. § 36-1-117(b)(3)(B). Thus, the statute implicitly recognizes that the rights of the biological father are superior to the rights of another would-be father.…Once the biological father has established his paternity, his constitutionally-protected fundamental right to parent his child vests and he is the legal father. That right may only be stripped pursuant to the statutory parental termination procedures - - it may not be forfeited in a balancing test or to another man who may appear to be a more ideal father.

*In Re: T.K.Y.*, 205 S.W.3d 343, 352 (Tenn. 2006).

The Trial Court found that Freeman is J.A.F.'s biological father and that finding is not disputed on appeal. Therefore, Freeman and not Husband is J.A.F.'s legal father. Given this, the custody dispute was between Wife, J.A.F.'s parent, and Husband, who is not J.A.F.'s parent.

-4-

This Court recently explained the standards that must be followed in a custody dispute between a parent and a non-parent in *In Re Adoption of W.J.P.* stating:

> The applicable legal standards with regard to a custody dispute between a natural parent and a non-parent differ markedly from the applicable standards with regard to a custody dispute between two natural parents. *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). "[I]n a contest between a parent and a non-parent, a parent cannot be deprived of the custody of a child unless there has been a finding, after notice required by due process, of substantial harm to the child." *In re Askew*, 993 S.W.2d 1, 4 (Tenn. 1999) (quoting *Bond v. McKenzie*, 896 S.W.2d 546, 548 (Tenn. 1995)). It is not until after a showing of substantial harm has been made that the court will consider the best interest of the child. *Id.* "[D]ue to the constitutional protection afforded biological parents, the [non-parent] has the burden of establishing by clear and convincing evidence that the child will be exposed to substantial harm if placed in the custody of the biological parent." *Hall v. Bookout*, 87 S.W.3d 80, 86 (Tenn. Ct. App. 2002). Courts cannot award custody to a non-parent, a third party, instead of a parent, "unless the third party can demonstrate that the child will be exposed to substantial harm if custody is awarded to the biological parent." *Ray*, 83 S.W.3d at 732.

*In Re Adoption of W.J.P.*, No. E2007-01043-COA-R3-PT, 2008 Tenn. App. LEXIS 49, at **26-27 (Tenn. Ct. App. Jan. 30, 2008), *no appl. perm. appeal filed*.

Husband admitted at trial that he could not say that Wife was a bad mother and the record on appeal is devoid of any, let alone clear and convincing, evidence showing any risk that J.A.F. would be exposed to substantial harm if placed in Wife's custody. Therefore, in the custody dispute between Wife, J.A.F.'s parent, and Husband, a non-parent, Wife cannot be deprived of custody of J.A.F. under the record before us on appeal. The Trial Court erred when it awarded custody of J.A.F. to Husband, a non-parent, rather than to Wife, J.A.F.'s parent. We reverse the grant of primary residential custody of J.A.F. to Husband, and award Wife custody of J.A.F.

We express a sincere hope that Wife and Freeman will consider what is in the best interest of J.A.F. in regard to visitation and contact with Husband from this point forward. It could only be traumatic for J.A.F. to cease to have contact with Husband. Husband, while neither the biological or legal father of J.A.F., is the only father that J.A.F. has ever known. Husband has not only behaved in every respect as a father to J.A.F., but was held out to the world for many years by Wife as J.A.F.'s father. The record shows that J.A.F. also has a close relationship with members of Husband's extended family, whom J.A.F. has known to be his grandparents, aunts, uncles, and cousins. It could only be traumatic to J.A.F. to have these relationships forbidden to him. We, therefore, hope that Wife and Freeman can put aside their own feelings toward Husband and consider what is in the best interest of J.A.F. in this matter. While this Court wishes it could do more than merely "hope" in this regard, the law prevents us from doing anything other than we have as to J.A.F.

We next consider whether the Trial Court erred in terminating Freeman's parental rights to J.A.F. The Trial Court terminated Freeman's parental rights under Tenn. Code Ann. § 36-1-113(g)(1) finding and holding in its November 20, 2006 order, *inter alia*:

[Husband] was the ONLY father this child ever knew. He is the moral, if not the legal, father of this child.

This court finds Mr. Freeman not credible as a witness in this matter. This court further finds that within four months prior to filing this case, and even within the last three years preceding this case, there is no proof in the record that Mr. Freeman spent any amount of time with or money for the child. Any past support or time with the child was token and not intended to be assertive of his parental rights, nor accepting of his responsibility.

Although the Trial Court found Freeman not to be credible, Wife also testified that Freeman gave her money on a regular basis for J.A.F., that Freeman saw J.A.F. on a regular basis, and that Freeman gave J.A.F. gifts including a BB gun and fish plaques. Wife also testified that J.A.F. uses Wife's cell phone to call Freeman on a regular basis. Both Freeman and Wife testified that most of the time Freeman would give Wife the money for J.A.F. in cash, and therefore there was no documentary evidence such as check stubs to support this testimony. Wife corroborated Freeman's testimony.

Wife and Freeman filed a motion asking this Court to consider certain post-judgment facts. This motion is denied. However, we need make no decision regarding whether grounds for termination were proven by clear and convincing evidence because the record on appeal clearly shows that it is not in J.A.F.'s best interest for Freeman's parental rights to be terminated given our decision that Wife have custody of J.A.F. Wife continues to have a relationship with Freeman. Wife, because of our decision, has custody of J.A.F. Wife wants J.A.F. to have contact with Freeman, J.A.F.'s biological and legal parent. The record before us is devoid of any showing of any danger or risk of harm to J.A.F. from Freeman. Given all this, it is not in J.A.F.'s best interest for Freeman's parental rights to be terminated. We, therefore, reverse the termination of Freeman's parental rights to J.A.F.

Given our reversal of the termination of Freeman's parental rights, Appellants' claimed error, if any, by the Trial Court in failing to appoint a guardian ad litem for J.A.F. was harmless. We, therefore, need not address Appellants' third issue raised on appeal.

We will consider the fourth and fifth issues raised on appeal together. The record reveals that the Trial Court's decision to award to Husband the first right to purchase the equity in the marital home was based, in large part, upon the Trial Court's decision to award Husband primary residential custody of the two minor children and the testimony from the older child, who was sixteen years old at the time of trial, expressing a desire to remain in Husband's custody and live in the marital home. The older child, however, reached the age of majority during the pendency of this

case and, as we have already discussed, Wife now has been granted custody of J.A.F. Given this, we vacate that portion of the Trial Court's order distributing the marital home and remand this case to the Trial Court to complete an overall equitable distribution of the marital property considering all relevant factors in this case, including our decision regarding custody of J.A.F.

## Conclusion

The judgment of the Trial Court terminating Freeman's parental rights to J.A.F. is reversed. The judgment of the Trial Court granting primary residential custody of J.A.F. to Husband is reversed, and Wife is awarded custody of J.A.F. That portion of the Trial Court's judgment distributing the marital home is vacated. All other portions of the Trial Court's judgment are affirmed. This cause is remanded to the Trial Court to effectuate the transfer of custody of J.A.F. from Husband to Wife, for an overall equitable distribution of the marital property in light of our decision in this case, and for collection of the costs below. The costs on appeal are assessed against the Appellee, Paul David Franklin.

_____
D. MICHAEL SWINEY, JUDGE