IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 13, 2009 Session

## JOHN P. KONVALINKA v. CHATTANOOGA-HAMILTON COUNTY HOSPITAL AUTHORITY

Appeal from the Chancery Court for Hamilton County
No. 08-0334     Howell N. Peoples, Chancellor

No. E2008-02091-COA-R3-CV - FILED JUNE 2, 2009

John P. Konvalinka ("Petitioner") filed a petition for access to public records seeking access to certain records in the possession of the Chattanooga-Hamilton County Hospital Authority ("the Hospital" or "Erlanger"). These documents were created pursuant to the provisions of a Corporate Integrity Agreement entered into between the Hospital and the federal Office of Inspector General of the Department of Health and Human Services following an investigation into allegations of illegal conduct by the Hospital. The Hospital filed a motion for protective order claiming the requested documents were confidential and protected from disclosure pursuant to: (1) the Tennessee Public Records Act; (2) the federal Freedom of Information Act; and/or (3) federal regulations implemented by the Department of Health and Human Services. The Trial Court found that the documents were protected from disclosure by the Tennessee Public Records Act; specifically, Tenn. Code Ann. § 10-7-504(a)(2)(A). This finding rendered moot whether the documents were protected from disclosure pursuant to either or both the Freedom of Information Act or the regulations developed by the Department of Health and Human Services. Petitioner appeals. We hold that the documents at issue are not protected from disclosure by the Tennessee Public Records Act, and the judgment of the Trial Court holding otherwise is vacated. We remand this case to the Trial Court for a determination of whether the documents at issue are protected from disclosure pursuant to applicable federal law.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Vacated; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Mathew D. Brownfield and Mark W. Litchford, Chattanooga, Tennessee, for the Appellant, John P. Konvalinka.

Joseph R. White, Fred H. Moore, and James H. Payne, Chattanooga, Tennessee, for the Appellee, Chattanooga-Hamilton County Hospital Authority.

# OPINION

## Background

The documents at issue in this Public Records Act case have their genesis from a federal and state investigation surrounding allegations that the Hospital submitted false claims to Medicare and Medicaid and improperly paid remuneration to physicians for referring patients to the Hospital. The Hospital eventually entered into settlement agreements with both the federal Office of Inspector General of the Department of Health and Human Services and the State of Tennessee. In addition to the settlement agreements, the Hospital entered into a Corporate Integrity Agreement with the Office of Inspector General of the Department of Health and Human Services. The Corporate Integrity Agreement was designed to promote compliance with the applicable statutes and regulations. Among other things, the Corporate Integrity Agreement required the Hospital to establish and maintain a compliance program, which included the creation of a compliance committee.

In March 2008, Petitioner served a request for access to public records on the Hospital seeking access to fifty-three separate groups of documents. Only three of the fifty-three requests are at issue in this appeal. These three requests are:

> (12)    Copies of all compliance reports submitted to the Compliance Committee since the 2005 settlement between Chattanooga Hamilton County Hospital Authority and the United States Federal Government/United States Justice Department; . . .

> (17)    Copies of all minutes from all meetings of the Erlanger Medical Center's Compliance Committee for the past four years; . . . [and]

> (41)    Copies of all minutes from all meetings of Erlanger's Compliance Committee for the past four (4) years. . . .[1]

After the Hospital refused to provide these three groups of requested documents, Petitioner filed a Petition for Access to Public Records with the Trial Court. Petitioner claimed that the Hospital lacked a good faith basis upon which to deny the public records request. Petitioner requested the Trial Court issue a show-cause order requiring the Hospital to appear and show cause why the petition should not be granted. Petitioner further requested the Trial Court enter an order requiring the Hospital to produce the records and award Petitioner his attorney fees.

The Hospital filed a Motion for Protective Order pertaining to the three document requests. The Hospital claimed that the records at issue were protected from disclosure pursuant to

---

[1] Request No. 17 and Request No. 41 appear to request the same information. In his brief on appeal, Petitioner acknowledges that these two requests do in fact request the same documents.

Tenn. Code Ann. §§ 10-7-504(a)(2)(A) and (a)(5)(A). In addition, the Hospital claimed that several federal statutes and regulations protected the disclosure of these documents, including 5 U.S.C. §§ 552(b)(4) and (b)(7), as well as various subparts of 45 C.F.R. §§ 5.65(b)(4) and 5.68.

Petitioner responded to the motion for protective order, asserting that several of the statutes and regulations cited by the Hospital did not apply to the requested documents and, even if they did, they did not operate to prevent disclosure of the requested documents.

Following a hearing on the motion for protective order, the Trial Court entered a detailed Memorandum Opinion and Order. According to the Trial Court:

> In October 2005, [the Hospital] entered into a Corporate Integrity Agreement ("CIA") and a Settlement Agreement with the Office of the Inspector General of the Department of Health and Human Services ("OIG"). . . . [The Hospital] also at this time entered into a Settlement Agreement with the State of Tennessee. The CIA requires heightened internal scrutiny and investigation of potential problems, detailed reporting of the results of these investigations to OIG, and the detailed notification of OIG of any "investigation or legal proceeding . . . brought by a governmental entity . . . involving an allegation that Erlanger has committed a crime or had engaged in fraudulent activities."

> \* \* \*

> **A.    Relevant Terms of the CIA**

> Under the CIA, [the Hospital] is required to form a Compliance Committee to monitor compliance with the CIA and report directly to the OIG, as well as establish a Disclosure Program to allow for employee disclosure of potential issues with or questions about [the Hospital's] compliance with civil, criminal or administrative law. . . . The CIA required Erlanger to create a Code of Conduct setting forth, among other things, "the requirement that all of [Erlanger's officers, directors, agents and employees] shall be expected to report to the Compliance Officer . . . suspected violations of any Federal health care program requirements or of Erlanger's own Policies and Procedures." Likewise, the Code of Conduct had to contain a "commitment to nonretaliation and to maintain, as appropriate, *confidentiality and anonymity with respect to such disclosures*." . . . (emphasis added)

> The Disclosure Program under the CIA had to allow for a mechanism through which individuals could report, with an expectation of anonymity and confidentiality, any potential violations

-3-

of law. . . . Like the Compliance Committee's Code of Conduct, the Disclosure Program had to emphasize the protection of "anonymous communications for which *appropriate confidentiality shall be maintained*." (emphasis added) These anonymous and confidential reports, once received via the Disclosure Program, were given to the Compliance Officer. The Compliance Officer is required under the CIA to perform an investigation of all such reports, and to keep a log containing the reports themselves along with "the status of the respective internal reviews, and any corrective action taken. . . ."

The CIA also requires that Erlanger submit annual reports to OIG "with respect to the status of, and findings regarding, Erlanger's compliance activities. . . ." These reports must contain a variety of information, including a summary of "Reportable Events" (e.g. potential violations of law), and corrective action taken in response to a violation or other issue, a summary of the Disclosure Program's log, a summary of "any ongoing investigation or legal proceeding" against the hospital that it is required to report under the CIA. . . .

## B.   Text and Purpose of the Statutory Exclusions

Under Tenn. Code Ann. § 10-7-503(a), "all state, county and municipal records . . . shall at all times . . . be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law." The statute does, however, limit its otherwise broad applicability with a number of exceptions for certain confidential records. One of the most pertinent exceptions in relation to this case provides that, "[a]ll investigative records of . . . the office of inspector general . . . shall be treated as confidential and shall not be open to inspection by members of the public. The information contained in such records shall be disclosed to the public only in compliance with a subpoena or an order of a court of record." Tenn. Code Ann. § 10-7-504(a)(2)(A).

[The Hospital] argues that this exception applies to the three records requests at issue here because there records were "generated, compiled and reported pursuant to the requirements of the CIA as part of the ongoing investigation by and settlement negotiations with the OIG." . . . [The Hospital] also asserts it was "performing investigative functions on behalf of and at the request of the OIG," and that the products of these investigative activities are clearly exempted from disclosure under the statute. . . . Petitioner, on the other hand, argues merely that this exception is inapplicable to the requested records in this case because [the Hospital] "cites no

-4-

authority for its position that it is now an agent of the OIG," and is therefore not entitled to confidentiality protections under the statute. . . .

While it is true that [the Hospital] does not provide any evidence or argument to support the existence of an agency relationship, Petitioner fails to respond to the basic import of [the Hospital's] argument here: viz. that the compliance records at issue are in effect "investigative records of the OIG" under the plain language of the statute. [The Hospital], under the CIA, is responsible with providing compliance and other investigative records to the OIG. The statute clearly protects such documents – "all investigative records . . . of the office of the inspector general" – as confidential, and exempts them from public disclosure.

If the statute did not so provide, and instead only protected records in the possession of the OIG (such requirement *is not* in Tenn. Code Ann. § 10-7-504(a)(2)(A)), the protections provided by the statute would be moot. Parties seeking the production of otherwise protected records in the hands of the OIG could simply by-pass the OIG altogether and demand records from all those public entities that provide the OIG with the contents of their investigative records. Surely the legislature could not have intended such illusory confidentiality protections for those categories of records they chose specifically to exempt from the broad applicability of the statute.

## C.    Confidentiality and the Efficacy of the CIAs

In further support of its position that there is good cause to protect as confidential the contents of the Compliance Committee reports, and the records of the Committee meeting minutes, [the Hospital] cites a federal case from the Northern District of California where the district court elaborates upon the confidential nature of the CIA documents:

> Once an entity enters into a CIA, the CIA typically requires the subject entity to adopt measures designed to promote compliance, and to submit annual reports and documents addressing the requirements of the CIA, including the results of audits and reviews. These types of documents often include confidential or proprietary information. Indeed, a frequent concern raised by the subject entities during negotiation of the CIA is what type of protection the

government will extend to the subject entity's confidential and proprietary information.

*Hersh & Hersh v. U.S. Dept. of Health and Human Services*, 2008 U.S. Dist. LEXIS 26237, at *18 (N.D. Cal. March 31, 2008). While the party seeking disclosure in *Hersh & Hersh* did so under the federal Freedom of Information Act, unlike the case *sub judice*, this court recognizes the validity of the district court's characterization of the compliance documents compiled under the CIA. The function of the compliance reports is to aid the OIG in its oversight of [the Hospital], and to likewise facilitate and enable full disclosure in the administration of the CIA.

The Petitioner claims that "[neither the CIA nor the settlement agreements have] any provision mandating there be confidentiality of the requested public records." . . . This assertion seems, under the plain language of the CIA, patently false. The CIA in this case *does* in fact call, on more than one occasion, for the confidentiality of the requested documents. The CIA explicitly states that the disclosures in the compliance reports should be kept with "confidentiality and anonymity" where appropriate, and that for disclosures made to the Compliance Officer via the Disclosure Program "appropriate confidentiality shall be maintained." . . . So not only are the contents of the compliance reports confidential on their face, per the *Hersh* court's characterization, but they are specifically designated as such under the language of the CIA.

Compelling disclosure of these documents would hamper both [the Hospital's] ability to comply with the CIA and OIG's ability to rely on the completeness of [the Hospital's] reports. [The Hospital], and other entities acting pursuant to CIAs, must feel free to fully disclose information to the OIG. If entities are not confident that the contents of their disclosure will remain confidential once it is prepared for the OIG, their willingness to comply fully with CIAs will greatly decrease. Likewise, the effectiveness of the OIG's efforts to oversee and regulate the health care industry through the use of CIAs will be negatively impacted if the regulated entities are persistently concerned that the information they compile for compliance is subject to public disclosure.

The Protective Order at issue only applies to three of the fifty-three document requests in the current case, and would not limit Petitioner's discovery beyond excluding specifically the Compliance Committees' compliance reports and the record of the Compliance Committee's minutes. (citations to the record omitted)

Following entry of the memorandum opinion, Petitioner appealed and argues on appeal that the Trial Court erred when it concluded that the records did not have to be produced. The specific issues raised by Petitioner are:

I.      Did the Trial Court err in holding that the requested compliance reports and records were not obtainable due to an exception to the Tennessee Public Records Act?

II.     Did the Trial Court err in holding that the requested compliance reports and records were investigative records of the Office of Inspector General?

III.    Did the Trial Court err by not requiring production of redacted compliance reports and records?

The Hospital argues that the Trial Court was correct when it found that Tenn. Code Ann. § 50-7-504(a)(2)(A) protected the records from disclosure. The Hospital further argues that even if Tenn. Code Ann. § 50-7-504(a)(2)(A) does not apply, the records nevertheless are protected from disclosure pursuant to Tenn. Code Ann. § 50-7-504(a)(5)(A) as well as applicable federal statutes and regulations.

## Discussion

The facts in this case are undisputed. The appeal involves matters of statutory interpretation, which present questions of law. With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Tenn. Code Ann. § 10-7-504(a)(2)(A) provides, in relevant part, as follows:

All investigative records of the Tennessee bureau of investigation, *the office of inspector general*, all criminal investigative files of the department of agriculture and the department of environment and conservation, all criminal investigative files of the motor vehicle enforcement division of the department of safety relating to stolen vehicles or parts . . . shall be treated as confidential and shall not be open to inspection by members of the public. The information contained in such records shall be disclosed to the public only in compliance with a subpoena or an order of a court of record; provided, however, that such investigative records of the Tennessee bureau of investigation shall be open to inspection by elected members of the general assembly if such inspection is directed by a duly adopted resolution of either house or of a standing or joint committee of either house. . . . (emphasis added)

-7-

The issue as to whether the above quoted statute applies is this case depends on whether, as the Hospital claims, "the office of inspector general" includes or is referring to both the state and federal Office of Inspector Generals. Petitioner claims that this statute only applies to the state Office of Inspector General, and because the Corporate Integrity Agreement was entered into between the Hospital and the federal Office of Inspector General, the statute simply has no bearing on this case.

In 2004, the Tennessee General Assembly created the Office of TennCare Inspector General which was to "focus solely on the prevention and detection of fraud and abuse in the TennCare program" *See* 2004 Tenn. Pub. Acts Ch. 673. At the same time, the Public Records Act, Tenn. Code Ann. § 10-7-504(a)(2), was amended to exempt from disclosure "[a]ll investigative records of the Office of TennCare Inspector General . . . ." *See* 2004 Tenn. Pub. Acts Ch. 673. There is no question that at that point in time, Tenn. Code Ann. § 10-7-504(a)(2) referred only to a State entity, i.e., the Office of TennCare Inspector General, as there clearly is no corresponding federal agency bearing that particular name.

In 2005, the General Assembly amended the relevant statute pertaining to the Office of TennCare Inspector General and, among other things, formally changed the name of the "Office of TennCare Inspector General" to "Office of Inspector General." *See* 2005 Tenn. Pub. Acts Ch. 474. Contemporaneous with this change, the Public Records Act was amended by "deleting the words 'Office of TennCare Inspector General' wherever they appear in the part and substituting instead the words 'Office of Inspector General.'" *See* 2005 Tenn. Pub. Acts Ch. 474.

As stated, it is clear to this Court that in 2004, the Tennessee General Assembly was referring only to the State Office of TennCare Inspector General in Tenn. Code Ann. § 10-7-504(a)(2)(A). We further conclude that the General Assembly continued to refer only to the State entity when the statute was amended in 2005 simply to reflect the name change from "Office of TennCare Inspector General" to "Office of Inspector General." In short, we agree with Petitioner that the General Assembly was not referring to the federal Office of Inspector General in Tenn. Code Ann. § 10-7-504(a)(2)(A), and the decision of the Trial Court on this issue is reversed.

The next issue is whether the records are exempt from disclosure pursuant to Tenn. Code Ann. § 10-7-504(a)(5)(A). The relevant portion of this statute provides as follows:

> (5)(A) The following books, records and other materials *in the possession of the office of the attorney general and reporter* which relate to any pending or contemplated legal or administrative proceeding in which the office of the attorney general and reporter may be involved shall not be open for public inspection:
>
> (i) Books, records or other materials which are confidential or privileged by state law;
>
> (ii) Books, records or other materials relating to investigations conducted by federal law enforcement or federal regulatory agencies,

which are confidential or privileged under federal law . . . .
(emphasis added)

On appeal, the Hospital acknowledges that the Tennessee Attorney General is not in physical possession of the requested documents. The Hospital argues, however, that "possession" does not necessarily mean physical possession. We need not decide if "in the possession" means more than actually physically possessing the documents because we conclude, at a minimum, that the clear language of the statute requires the Tennessee Attorney General to have actual physical possession of the documents in order for this exception to apply. Therefore, we conclude that Tenn. Code Ann. § 10-7-504(a)(5)(A) does not apply in this case.[2]

Although we conclude that Tenn. Code Ann. §§ 10-7-504(a)(2)(A) and (a)(5)(A) do not prohibit disclosure of the requested documents, this does not end our inquiry. Although the Tennessee Attorney General was involved in this case, the development of the Corporate Integrity Agreement was done through the federal Office of Inspector General. The federal Office of Inspector General is certainly at liberty to provide that certain documents generated pursuant to the Corporate Integrity Agreement are confidential consistent with the provisions of the Freedom of Information Act and/or the regulations adopted by the Department of Health and Human Services. The Office of Inspector General's ability to do that is not eliminated simply because the agreement is entered into with a state governmental entity such as the Hospital. In such a situation, federal law could very well prohibit disclosure of these documents even if state law does not.

The Hospital argues that the requested documents are protected from disclosure pursuant to exceptions contained in the Freedom of Information Act, 5 U.S.C. § 522(b), as well as regulations implemented by the Department of Health and Human Services addressing confidentiality of certain documents, including 45 C.F.R. §§ 5.65 and 5.68.[3] The Trial Court never

_____

[2] This conclusion is reinforced by Tenn. Code Ann. § 10-7-504(a)(5)(A)(v) which discusses disclosure of documents that are "in the possession" of both the Tennessee Attorney General and another department or agency. This section would make absolutely no sense if possession did not mean physical possession.

[3] 45 C.F.R.§ 5.65 addresses confidentiality of trade secrets and confidential information of the Department of Health and Human Services. This regulation provides that information is "confidential" if it meets one of the following definitions:

> (i) Disclosure may impair the government's ability to obtain necessary information in the future;
>
> (ii) Disclosure would substantially harm the competitive position of the person who submitted the information;
>
> (iii) Disclosure would impair other government interests, such as program effectiveness and compliance; or
>
> (iv) Disclosure would impair other private interests, such as an interest in controlling availability of intrinsically valuable records, which are sold in the

(continued...)

addressed whether the documents at issue in this case were confidential under federal law as that issue was rendered moot once the Trial Court concluded, incorrectly, that the documents were protected from disclosure under Tenn. Code Ann. § 10-7-504(a)(2)(A). Because these documents are not in the record before us, we cannot determine if they are confidential under applicable federal law. Therefore, we remand this case to the Trial Court for a determination as to whether all or any portions of the requested documents are protected from disclosure pursuant to either federal statute(s) or federal regulation(s).

## Conclusion

The judgment of the Trial Court is vacated and this case is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are taxed to the Appellee, the Chattanooga-Hamilton County Hospital Authority.

_____
D. MICHAEL SWINEY, JUDGE

---

[3](...continued)
market by their owner.

45 C.F.R. § 5.65(b)(4).