IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 10, 2010 Session

## AMY E. CARDWELL v. DONALD CHRISTOPHER HUTCHINSON

**Appeal from the Fourth Circuit Court for Knox County**
**No. 107952      Bill Swann, Judge**

_____

**No. E2009-02680-COA-R3-CV - Filed November 24, 2010**

_____


Amy E. Cardwell ("Petitioner") was sexually abused by Donald Christopher Hutchinson ("Respondent"), who was the Youth Leader at Petitioner's church. Petitioner, who is mentally disabled, filed for and obtained an order of protection prohibiting Respondent from having any contact with Petitioner. Respondent also was prohibited from attending the church where he abused Petitioner so long as Petitioner continued to attend that church. The order of protection expired in one year, at which time both Petitioner and Respondent agreed to extend it for another one year period. At the expiration of the second one year term, Petitioner filed a motion seeking another one year extension. Respondent opposed the second extension. Following a hearing, the Trial Court extended the order of protection for another year. Respondent appeals, and we affirm.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Fourth Circuit Court Affirmed; Case Remanded**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.


Joshua D. Hedrick, Knoxville, Tennessee, for the Appellant, Donald Christopher Hutchinson.


Leith Marsh, Caroline Thompson, and Donna Smith, Knoxville, Tennessee, for the Appellee, Amy E. Cardwell.

## OPINION

## Background

In August of 2007, Petitioner filed a petition for an ex parte order of protection from Respondent. When the petition was filed, Petitioner was twenty years old and Respondent was thirty-four. An ex parte order of protection was entered which prohibited Respondent from coming about Petitioner or otherwise having any contact with her. A hearing on whether to continue the order of protection was set for the following month.

Following a hearing, the Trial Court determined that an order of protection should be issued. Respondent was a Church Youth Leader at the church Petitioner attended. The Trial Court found that Respondent had coerced Petitioner to engage in various sexual acts even though Petitioner, due to a mental disability, was "incapable of exercising judgment or consent for any of these activities." Respondent again was ordered not to come about or otherwise contact Petitioner for any reason. The Trial Court specifically found:

> [Respondent] abused his position of authority at his church, and because [Petitioner] must not be robbed of her church home, for so long as she chooses to attend there, he is enjoined from any presence on the campus of that church, its buildings, and any off-site functions of that church. If she chooses to change her church home, [Respondent] may of course return. He has performed sex acts on [Petitioner] in the church. The Court has received a full psychological assessment of [Petitioner], revealing her childlike nature, her I.Q., her functional ability, [and] her utter vulnerability to exploitation. [Respondent] used that vulnerability for his own gratification. He is a predator. His credibility is minimal.

The order of protection was entered for an effective period of one year, until October 3, 2008. Respondent did not appeal the Trial Court's decision granting the original one year order of protection.

By agreement of Petitioner and Respondent, the order of protection was extended in October 2008 and contained the same restrictions as the original order of protection. The second order of protection was valid for one year and was set to expire on October 13, 2009.

In October of 2009, Petitioner filed a motion seeking to extend the order of protection for another one year period. Because Respondent did not agree to this second extension, a hearing was held on whether another extension was appropriate. At the hearing, Petitioner testified that on two occasions, she saw Respondent at the Turkey Creek Shopping Center. Whenever Petitioner saw Respondent, she would become very anxious, it would cause her stomach to hurt, and it would bring back bad memories. Although Petitioner and Respondent did make eye contact and Petitioner was "panicking and freaking out," Respondent did not say or do anything and eventually left.

Petitioner testified that she has had to seek counseling to help her address the sexual abuse. Although she was continuing to receive therapy to help her deal with the consequences of the sexual abuse, the order of protection made her feel much safer. Petitioner still was intimidated and scared by Respondent. Petitioner acknowledged that since the first order of protection was entered, Respondent has not contacted her in any way.

Petitioner's mother, Cathy Cardwell ("Mother"), also was called as a witness. Mother testified that whenever Petitioner saw Respondent or even his car, she would become agitated, depressed, and "sometimes she'll even talk about it for days." Mother testified that Petitioner was at a movie and a scene triggered a memory of the sexual abuse, and Petitioner got up and left the movie theater in tears. Mother stated that Petitioner once again attends her church regularly. After the abuse, but before the first order of protection was entered, "[Petitioner] had an altercation with [Respondent] on the church steps and did not go to church for four months until she got the order of protection. And ever since, she has gone essentially every Sunday." When asked if the order of protection has helped her daughter, Mother stated:

> Well, she is still insecure but not as insecure. She feels freer that she can go places and if he's there he'll have to leave or he can't come up to her, but she is still concerned about that. Like a week ago she was helping me at the Foothills Craft Guild and she says to me what if he comes in here. And I said you don't have to worry about that, Amy, you have an order of protection and he has to stay away from you . . . and that calmed her down some.

The deposition of Bruce G. Seidner, Ph.D. ("Dr. Seidner"), was entered into evidence at the hearing. Dr. Seidner's deposition was admitted at the first hearing in 2007 and was readmitted into evidence again at the 2009 hearing. Dr. Seidner received a doctorate in psychology from the University of Tennessee and has been licensed in Tennessee since 1987.

Various tests were performed under Dr. Seidner's direction on Petitioner when she was 16 years old. These tests were requested by Petitioner's parents. Petitioner tested in the "Mild Mental Retardation range" and had a significant deficit in adaptive functioning. Test results further showed that Petitioner was functioning at a "10-year-old level" with respect to adaptive functioning and day-to-day activities. Petitioner also demonstrated a significant deficit with regard to her emotional functioning and social skills.

Dr. Seidner testified at his deposition that Petitioner's age equivalent scores were not likely to improve as she got older. From an intellectual standpoint, Petitioner was functioning at the seventh grade level "at the most." Petitioner's full scale I.Q. was 63.[1] According to Dr. Seidner, Petitioner was "really quite dependent, so she's going to rely on others as a guide for what's appropriate behavior, what's not appropriate behavior. She going to be very, very influenced and vulnerable to influence."

Following the hearing, the Trial Court announced its decision from the bench. According to the Trial Court:

> The Court credits the [Petitioner's] testimony, finding it credible, that "seeing [Respondent] bothers me, brings back bad memories, makes me feel anxious, my stomach reels." . . . We find the mother's testimony credible that, "Whenever there is a sighting, she is upset, agitated, depressed." We find it, however, most particularly credible that [Petitioner] is comforted in knowing that she has a judicial order that keeps [Respondent] out of her presence upon pain of incarceration. We find [Respondent's attorney's] observation absolutely trenchant that [Respondent] has not engaged in any violation of the order of protection, much less those things that led to the order of protection. All this is good. This is good. But this Court believes that [Petitioner] is entitled to all mental comfort that she can have from the judicial system and that includes knowing that there is paperwork in place that would put this man in jail if he injects himself into her presence. . . .

---

[1] Petitioner's mental disability likely came about because her biological mother was addicted to drugs when Petitioner was born. Petitioner was adopted by Mother and her husband when Petitioner was very young. Based on the record, Mother and her husband have done everything possible to assist Petitioner with her disabilities and to minimize their effects.

-4-

Respondent appeals claiming only that Petitioner was required to prove that she was in immediate danger of harm before the order of protection could be extended. Respondent claims that there was no such proof and, therefore, the Trial Court erred when it extended the order of protection for another one year period.

**Discussion**

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The issuance and extension of orders of protection is governed by Tenn. Code Ann. § 36-3-605 which provides, in relevant part, as follows:

> (a) Upon the filing of a petition under this part, the courts may immediately, for good cause shown, issue an ex parte order of protection. An immediate and present danger of abuse to the petitioner shall constitute good cause for purposes of this section.

> (b) Within fifteen (15) days of service of such order on the respondent under this part, a hearing shall be held, at which time the court shall either dissolve any ex parte order that has been issued, or shall, if the petitioner has proved the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, extend the order of protection for a definite period of time, not to exceed one (1) year, unless a further hearing on the continuation of such order is requested by the respondent or the petitioner; in which case, on proper showing of cause, such order may be continued for a further definite period of one (1) year, after which time a further hearing must be held for any subsequent one-year period. Any ex parte order of protection shall be in effect until the time of the hearing, and, if the hearing is held within fifteen (15) days of service of such order, the ex parte order shall continue in effect until the entry of any subsequent order of protection issued pursuant to § 36-3-609.

> If no ex parte order of protection has been issued as of the time of the hearing, and the petitioner has proven the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence, the court may, at that time, issue an order of protection for a definite period of time, not to exceed one (1) year.

Tenn. Code Ann. § 36-3-605(a) & (b). In addition, the General Assembly specifically set forth its intent that orders of protection are intended to protect the victims. *See* Tenn. Code Ann. § 36-3-618 (2010).

On appeal, Respondent argues that in order to extend the order of protection, Petitioner's burden of proof is the same burden that was required of her when the original order of protection was entered, i.e., she must establish an immediate and present danger of abuse. We rejected this very argument in *Wadhwani v. White*, No. M2005-02655-COA-R3-CV, 2007 WL 27329 (Tenn. Ct. App. Jan. 3, 2007), *no appl. perm. appeal filed,* wherein we stated:

> A party seeking entry of an ex parte order of protection has a significant burden of proof; he or she must demonstrate "[a]n immediate and present danger of abuse to the petitioner." Tenn. Code Ann. § 36-3-605(a). Mr. White contends Ms. Wadhwani had to carry that burden of proof, to prove an immediate and present danger of abuse to obtain an extension or modification of the order. We, however, find his contention is without merit.
>
> A party seeking a modification or extension of an existing order of protection, which is the case here, has a less onerous burden of proof than that suggested by Mr. White. The party seeking a modification or extension only needs to prove "the allegation of domestic abuse, stalking or sexual assault by a preponderance of the evidence." *See* Tenn. Code Ann. § 36-3-605(b); *see also Collins v. Pharris*, No. M1999-00588-COA-R3-CV, 2001 WL 219652, at * 4 (Tenn. Ct. App. March 7, 2001).
>
> To obtain the modification or extension of the Order of Protection at issue, Ms. Wadhwani had the burden of proving by a preponderance of the evidence, the allegation of domestic

abuse, the definition of which includes placing an adult in fear of physical harm. *Collins*, 2001 WL 219652, at * 5 (citing Tenn. Code Ann. § 36-3-601(1)(Supp. 2000)). . . .

*Wadhwani*, 2007 WL 27329, at *3.

Returning to the present case, Petitioner proved sexual assault by a preponderance of the evidence, necessitating the entry of the original order of protection. The proof further establishes that there is a likelihood that Petitioner will suffer significant harm if the order of protection is not extended. Due to Petitioner's disability, she is much more vulnerable than other people her age. Not extending the order of protection likely will result in Petitioner never returning to her church out of fear that Respondent will be present at that church. Petitioner will be afraid of running into Respondent whenever she is out in public, including at her church home. Not continuing the order of protection would have the unintended effect of placing Petitioner under house arrest because she would be too afraid to leave her house and effectively would prevent her from attending her own church. Such a result is untenable and inconsistent with the stated purpose of the order of protection statute which is intended to protect the victim. At a minimum, Petitioner has established that she was a victim of sexual assault and that she, given her particular circumstances, has a present fear of physical harm. Thus, she has met the "less onerous" requirements for an extension of the order of protection. *See Wadhwani*, 2007 WL 27329, at *3 (citing *Collins*, 2001 WL 219652, at * 5; Tenn. Code Ann. § 36-3-601(1)(Supp. 2000)).

As set forth previously, the only issue raised by Respondent is whether Petitioner was required to show an immediate and present danger of abuse when seeking an extension of the order of protection. We answered this question in *Wadhwani* in the negative. Based on the specific facts of this case, which include Petitioner's mental disability which makes her more vulnerable and susceptible both to her fear and to harm, we find that the Trial Court did not err when it continued the order protection for another year.

## Conclusion

The judgment of the Trial Court is affirmed. This cause is remanded to the Fourth Circuit Court for Knox County solely for collection of the costs below. Costs on appeal are taxed to the Appellant, Donald Christopher Hutchinson, and his surety, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE

-7-