# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 21, 2011 Session

## IN RE: NATALIE R. C.

**Appeal from the Juvenile Court for Blount County**
**No. 22928     William Terry Denton, Judge**

---

**No. E2011-01185-COA-R3-PT-FILED-OCTOBER 18, 2011**

---

Janet S. ("Grandmother"), maternal grandmother and custodian of the minor child Natalie R. C. ("the Child"), filed a petition to terminate the parental rights of Kenneth C. ("Father") in the Juvenile Court for Blount County ("the Juvenile Court").  Christy S. ("Mother"), the Child's mother, is deceased.  The Juvenile Court terminated Father's parental rights on the grounds of failure to pay child support and failure to visit the Child.  Father appeals, arguing, among other things, that the petition to terminate his parental rights was fatally defective because of numerous deficiencies and therefore should have been dismissed.  We hold that the petition to terminate parental rights was defective, although not fatally so, due to multiple deficiencies.  We vacate the judgment of the Juvenile Court and remand for further proceedings consistent with our Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

Lance A. Evans, Maryville, Tennessee, for the appellant, Kenneth C.

Lawrence P. Leibowitz and Jennifer L. Knapp, Knoxville, Tennessee, for the appellee, Janet S.[1]

Laura Levy, Guardian Ad Litem.[2]

---

[1]Janet S. was represented by a different attorney at trial.

[2]The previous Guardian Ad Litem, Sammi S. Maifair, was granted permission to withdraw by our

# OPINION

## Background

The Child was born in 2004. Mother and Father divorced in 2009. Pursuant to the final divorce decree, Father was to have no visitation with the Child until he completed certain judicial requirements and petitioned the court. The final divorce decree noted that Father had not taken the required parenting class because of his incarceration. Mother died later in 2009.

Grandmother petitioned for custody of the Child. In July 2010, Grandmother received custody in loco parentis to the Child. In September 2010, Grandmother filed a petition in the Juvenile Court to terminate Father's parental rights. The petition alleged non-payment of child support and failure to visit by Father. In February 2011, Grandmother filed an amended petition to terminate Father's parental rights alleging that Father had paid no child support or engaged in any meaningful visitation with the Child after his release from the correctional facility in September 2010. Father filed an answer raising several affirmative defenses. Father alleged that the petition to terminate parental rights contained a number of deficiencies. A hearing in this matter was held in April 2011. Before the witnesses testified, the Juvenile Court found that Father's affirmative defenses based upon alleged deficiencies in the petition to terminate parental rights were without merit.

Grandmother testified first. Grandmother stated that she had maintained full physical possession of the Child since September 15, 2009. Grandmother testified that, from the time of Mother's death to the time Grandmother learned of Father's going to jail, Father had not visited the Child. Grandmother further testified that Father had not visited between September 2010 and the day of the trial. Grandmother stated that Father had paid no child support between September 2010 and the day of the trial. Grandmother testified that Father called the Child once but did not ask to see the Child. Grandmother stated that she had never denied Father co-parenting time.

Grandmother testified that Father sent three letters to the Child while Father was incarcerated. Grandmother stated that Father once delivered a present for the Child on Christmas. Grandmother testified that, other than the Christmas present, Father provided nothing for the Child while Grandmother had custody of the Child.

Father testified next. Father stated that he currently was serving time in jail but

---

[2](...continued)
Order. On temporary remand and stay, the Juvenile Court substituted Laura Levy as Guardian Ad Litem.

he expected to get out "probably first week of October." Father was in jail for testing positive for cocaine among other things. Father stated that in the last two years his efforts to secure visitation with the Child were minimal. Father stated that in the seven months after he got out of jail, he made additional attempts to call the Child without success, and so he gave up. Father testified that he was denied visitation with the Child. Father stated that he had to go through Grandmother's roommate, Sherry K., to talk about the Child. Father later stated that Grandmother herself had not denied Father visitation. Father testified that he has not paid any child support in the period after September 2010. Father stated that he purchased cigarettes for himself on occasion. Father also stated that his wife had inherited a house and that he paid taxes on it.

Father acknowledged that he never petitioned for any rights to the Child in divorce court or juvenile court. Regarding why, Father stated he was "absconding from the law" and "lay[ing] low." Father testified that he has "either been on the run, in jail, or in - - on probation" since he turned 30. Father stated that he wants to see the Child and is willing to pay child support.

The Juvenile Court entered an order terminating Father's parental rights on the basis of non-payment of child support and lack of visitation. Father appeals.

**Discussion**

Though not stated exactly as such, Father raises three issues on appeal: 1) whether the Juvenile Court erred by not dismissing Grandmother's petition to terminate Father's parental rights as a result of allegedly fatal defects in the petition; 2) whether the Juvenile Court erred by not dismissing Grandmother's petition to terminate Father's parental rights as a result of Grandmother's failure to provide proof or notice that adoption was contemplated; and 3) whether the Juvenile Court erred in finding that it was in the Child's best interest to terminate Father's parental rights and then terminating Father's parental rights. As we believe the dispositive issue on appeal is a legal one not involving any factual determinations, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.,* 58 S.W.3d 706, 710 (Tenn. 2001).

Father argues that Grandmother's petition to terminate parental rights was defective in four respects. Father first contends that the petition failed to include the notice required by Tenn. R. Civ. P. 9A:

> In addition to meeting all other applicable rules governing the filing of
> pleadings, any complaint or petition seeking a termination of parental rights

-3-

shall contain the following notice: "Any appeal of the trial court's final disposition of the complaint or petition for termination of parental rights will be governed by the provisions of Rule 8A, Tennessee Rules of Appellate Procedure, which imposes special time limitations for the filing of a transcript or statement of the evidence, the completion and transmission of the record on appeal, and the filing of briefs in the appellate court, as well as other special provisions for expediting the appeal. All parties must review Rule 8A, Tenn. R. App. P., for information concerning the special provisions that apply to any appeal of this case."

Tenn. R. Civ. P. 9A.

Father further argues that the petition failed to comply with Tenn. Code Ann. § 36-1-113(d)(3)(A)(i) in that the petition did not state that the putative father registry had been consulted within ten working days of the filing of the petition. The statute provides, in relevant part:

(3)(A) The petition, or allegations in the adoption petition, shall contain a verified statement that:

(i) The putative father registry maintained by the department has been consulted within ten (10) working days of the filing of the petition and shall state whether there exists any claim on the registry to the paternity of the child who is the subject of the termination or adoption petition;

Tenn. Code Ann. § 36-1-113(d)(3)(A)(i)(2011).

Father also argues that the petition failed to comply with Tenn. Code Ann. § 36-6-224 in that the petition did not contain certain statistical information concerning the Child's present addresses, places where the Child had lived during the past five years, and names and present addresses of persons with whom the Child has lived during the relevant period. The statute provides:

(a) Subject to the provisions of § 36-4-106(b), in a child-custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath, as to the child's present address or whereabouts, the places where the child has lived during the last five (5) years, and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit must state whether the party:

-4-

(1) Has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child and, if so, identify the court, the case number, and the date of the child-custody determination, if any;

(2) Knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding; and

(3) Knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child and, if so, the names and addresses of those persons.

(b) If the information required by subdivisions (a)(1)-(3) is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished.

(c) If the declaration as to any of the items described in subdivisions (a)(1)--(3) is in the affirmative, the declarant shall give additional information under oath as required by the court. The court may examine the parties under oath as to details of the information furnished and other matters pertinent to the court's jurisdiction and the disposition of the case.

(d) Each party has a continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding.

(e) If a party alleges in an affidavit or a pleading under oath that the health, safety, or liberty of a party or child would be jeopardized by disclosure of identifying information, the information must be sealed and may not be disclosed to the other party or the public unless the court orders the disclosure to be made after a hearing in which the court takes into consideration the health, safety, or liberty of the party or child and determines that the disclosure is in the interest of justice. Nothing in this subsection (e) shall be construed to require sealing of any information or records maintained by the state or a local government except identifying information in a custody or visitation action brought under this part.

Tenn. Code Ann. § 36-6-224 (2010).

Finally, Father contends that the petition failed to comply with Tenn. Code Ann. § 36-1-113(d)(3)(C) in that the petition did not contain language stating that the termination of his parental rights would forever sever all of Father's rights as a parent and that Father would have no right to notice of proceedings for an adoption of the Child or the right to object to any such adoption. The statute provides, in relevant part:

(C) The petition to terminate, or the adoption petition that seeks to terminate parental rights, shall state that:

(i) The petition or request for termination in the adoption petition shall have the effect of forever severing all of the rights, responsibilities, and obligations of the parent(s) or guardian(s) to the child who is the subject of the order, and of the child to those parent(s) or guardian(s);

(ii) The child will be placed in the guardianship of other person, persons or public or private agencies who, or that, as the case may be, shall have the right to adopt the child, or to place the child for adoption and to consent to the child's adoption; and

(iii) The parent or guardian shall have no further right to notice of proceedings for the adoption of the child by other persons and that the parent or guardian shall have no right to object to the child's adoption or thereafter, at any time, to have any relationship, legal or otherwise, with the child.

Tenn. Code Ann. § 36-1-113(d)(3)(C) (2011).

Grandmother does not deny the omissions in the petition but rather disputes what effect they should have. Grandmother argues: (1) Father timely filed a notice of appeal so lack of notice stemming from the absence of the Tenn. R. Civ. P. 9A required notice is moot; (2) there was no dispute as to the Child's paternity so the provisions of Tenn. Code Ann. § 36-1-113(d)(3)(A)(i) were not applicable in this matter; (3) Father actually knew where the Child was living; and (4) Father had counsel to inform him of the effect of the termination of his parental rights, and, furthermore, Tenn. Code Ann. § 36-1-113(d)(3)(C) deals primarily with adoption proceedings, from which this present action did not arise. In sum, Grandmother argues that the petition sufficiently complied with all relevant rules and statutes, notwithstanding certain omissions.

We disagree with Grandmother. We regard these omissions as deficiencies which, taken together, render the petition defective. Perhaps any one of the deficiencies alone might have constituted harmless error, but we are not prepared to hold that a petition

to terminate parental rights can suffer these multiple deficiencies and remain valid.

We first note the mandatory language of the rule and statutes in question, something not contested by Grandmother. Also, we observe that terminating parental rights is an especially grave and serious matter. The United States Supreme Court has described "the interest of parents in the care, custody, and control of their children" to be "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000). Our General Assembly and our Supreme Court have made certain policy decisions concerning what must be included in a petition to terminate parental rights. However technical these omissions may seem, given the number of omissions considered in the context of a termination of parental rights, they may not be overlooked or excused. We, however, do not agree with Father that these defects are fatal and require the petition to be dismissed. These defects are such that they can be corrected by Grandmother and her current attorney if given the opportunity, and they choose to do so. Our decision provides that opportunity.

As a result of our holding with respect to issue one, Father's remaining issues are pretermitted.[3] The judgment of the Juvenile Court is vacated and this cause is remanded to the Juvenile Court for further proceedings consistent with this Opinion.

## **Conclusion**

The judgment of the Juvenile Court is vacated. This cause is remanded to the Juvenile Court for further proceedings consistent with this Opinion and for collection of costs below. Costs on appeal are taxed one-half against the appellant Kenneth C., and his surety, if any; and one-half against the appellee, Janet S.

_____
D. MICHAEL SWINEY, JUDGE

---

[3]We note that the order of termination in this case improperly failed to state that the Juvenile Court found that termination of Father's parental rights was in the Child's best interest nor did it cite to the specific statutory grounds upon which his parental rights were terminated.