# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 6, 2011 Session

## KENNETH A. RITCHIE v. ELIZABETH WIDMAIER PEW RITCHIE

### Appeal from the Chancery Court for Knox County
### No. 173821-3    Michael W. Moyers, Chancellor

### No. E2011-01049-COA-R3-CV-FILED-MARCH 26, 2012

After twenty-five years of marriage, Kenneth A. Ritchie ("Husband") sued Elizabeth Widmaier Pew Ritchie ("Wife") for divorce. After a trial, the Trial Court entered its Judgment for Divorce, which *inter alia*, awarded Wife a divorce, distributed the marital assets and debts, and awarded Wife alimony in solido. Husband appeals to this Court raising an issue about the alimony in solido. Wife raises an issue about the Trial Court's refusal to award her attorney's fees, and also requests an award of attorney's fees on appeal. We affirm, and decline to award attorney's fees on appeal.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Richard A. Sedgley, Knoxville, Tennessee, for the appellant, Kenneth A. Ritchie.

Bernard E. Bernstein, Knoxville, Tennessee, for the appellee, Elizabeth Widmaier Pew Ritchie.

# OPINION

## Background

Husband and Wife were married in 1983. Three children were born of the marriage. Although all of these children now are adults, two of them are severely disabled suffering from autism, and subject to a conservatorship. During the marriage, Wife was a stay-at-home wife and mother per the parties' agreement. At the time of trial, the two disabled adult children lived in a facility. No issues with regard to these disabled children are raised in this appeal.

The case was tried in August of 2010. Husband testified that he has a degree from the University of Michigan Law School. Prior to the marriage, Husband was licensed as an attorney in Pennsylvania from 1973 through 1976. At that time, Husband worked as an Assistant United States Attorney. Husband later became an in-house counsel for Sun Coal & Company in Tennessee. His position at Sun Coal & Company did not require Husband to be licensed to practice law in Tennessee, and, at the time of trial Husband did not hold a license to practice law either in Tennessee or in any other state.

Husband was terminated from his job as in-house counsel at Sun Coal & Company approximately twelve years prior to trial. Husband was 56 years old when he was terminated from his job at Sun Coal & Company in 1998. Husband received severance pay for one year after this termination. Since his termination from Sun Coal & Company, Husband has worked only part time, approximately two days per week, first at Steven Loft Package Store and then at Bob's Package Store. He also has been involved in golf, hiking, biking, and running. Husband testified that after he left Sun Coal & Company, the family lived on his severance pay until that was exhausted, and then on Husband's earnings from working at the package stores, his monthly Social Security check, and withdrawals from Husband's retirement account. Husband applied for Social Security when he was 62. At the time of trial, Husband was 67 years old.

Husband admitted that Wife inherited money during the marriage, but he did not know how much she had inherited. Husband admitted that until they started withdrawing money from his retirement account, the account had "over a million dollars in it." When asked, Husband stated that he thought that they were taking $6,500 out of the account monthly for family living expenses.

Husband testified that he obtained money from the parties' HELOC to purchase a new car in 2009. Husband was asked if he had told Wife that he would pay off the HELOC when he received his inheritance from his mother and he stated: "I don't think my mother

was dead.… But if she was dead, I - - I may have said that. If she was dead, I may have said that." The parties also used money from the HELOC to remodel the kitchen in the marital home in 2002, and to pay their daughter's college tuition. When asked, Husband agreed that before their separation the parties also obtained money from the HELOC and put it into their checking account to pay bills. Wife also purchased a new car in 2009 using money from the HELOC.

Husband admitted that he spent $6,000 toward a planned vacation in Italy with his girlfriend. He also admitted that he had paid for a hotel room in Nashville where he stayed with his girlfriend, that he has spent money on meals out with his girlfriend, and that he spent money on camping equipment so he and his girlfriend could hike and camp on the Appalachian trail for four nights. Wife testified that Husband spent approximately $4,900 on himself and his girlfriend during the marriage.

Husband testified that during the pendency of the divorce, Wife had gotten over $39,000 by keeping the parties' tax refund and taking money out of the parties' various marital accounts. When asked, Husband admitted that his health insurance will drop Wife from coverage once they divorce. Husband testified that he thinks Wife should utilize COBRA, and stated that the cost for her to do so would be $344 per month. Husband admitted that in addition to his medical coverage, he also is on Medicare.

Wife is a college graduate who holds a Bachelor's of Arts in Economics and Accounting. Prior to the marriage, Wife worked at Sunoco[1] from 1974 until 1983 and held a position as an assistant corporate officer. During the marriage, Wife was a stay-at-home wife and mother.

Wife testified that she has health problems including an under-active thyroid; essential tremor, which causes her hands to "shake quite a bit," demyelination in her brain; restless leg syndrome; and anxiety. Wife also testified that she takes hormone replacement therapy due to a hysterectomy. When asked, Wife admitted that her health problems do not preclude her from working.

Wife testified that COBRA coverage would cost her $344 per month, and testified that she can purchase COBRA coverage only for three years at which time she will be 60 years old. Wife will not be eligible for Medicare coverage until she turns 65. Wife testified that during the marriage she received her generic prescriptions free of charge

[1]It is not clear from the record on appeal whether this company is the same as Sun Coal & Company where Husband testified he worked, although it appears that it may have been. Whether it was or was not is immaterial to the issues raised on appeal.

through Husband's health insurance.  Wife can continue to get free generic prescriptions through COBRA coverage.  Wife attempted to apply for health insurance on her own and was denied.

Wife testified that at the time of the marriage she had separate property in the form of stock in Sun Coal & Company and that Husband sold her stock for the parties to use for living expenses after he was terminated from Sun Coal & Company.  Wife testified that after Husband was terminated:

> He always handled our investments, and that if he could figure out that we were financially sound, then he should decide what he should do with the rest of his life.  Well, this decision was that he was going to work a couple of days a week, and he was done working full time.  I trusted him that we were financially sound.

> And his idea was that he had a year of severance, and then we would pay - - we would sell his stock options, and that after that, we would start pulling money out of the IRA.  Well, in the meantime, my mother died, and I received an inheritance of about $90,000, and so the story then changed, and it was that - - and he also had assured me that he had enough money in his IRA to put our daughter through college so that that was not an issue.

> When my mother died, and I got the $90,000 of inheritance, he then decided, as he said, it was all one big pot of money, my love, and that it didn't make any sense then to pull money out of the IRA cause there were tax consequences, and it made more sense for us to spend my inheritance and sell my stock, and then when that money was gone, then we would pull money out of the IRA and so - - ....  That most certainly did occur.  And then we spent all of my money, which was $175,000, and then we sold - - and we sold all the stock along with that, and when that was gone, we started pulling out - -

Wife testified that she spent over $175,000 of her separate property for family purposes during the marriage.  Wife testified:

> I am saying I was asked to use my money to support the family.  All I am saying about this, Mr. Valone, is that I have spent $175,000 to support the family.  So he needs to pay off the home equity loan to equal this....  And that's what he has said all along he would do, pay off the home equity loan....  I'm telling the Court that my husband all along, and we agreed, that the home equity loan would be paid out of his inheritance, because as he said, it was

-4-

only fair because all my money was spent to support the family. My husband said that over and over and over again and promised it to me, and he knows he did, and that is what is fair, and he knows that's what he said, and that is what is fair.... I don't want him to reimburse me. I want him to put the equal amount of money back into the debt of this family.

Wife testified that she put $60,000 of her separate funds into the purchase of the marital home 27 years before trial, and she admitted when asked that this money was a gift to the marital estate.

After the trial, the Trial Court entered its Judgment for Divorce on October 25, 2010, which *inter alia*, awarded Wife a divorce, divided the marital assets and debts, awarded Wife $200,000 as alimony in solido, awarded Wife additional alimony in solido of $12,000 to cover her estimated health insurance costs for the next three years, and awarded Wife attorney's fees. In its memorandum opinion incorporated into the Judgement for Divorce by reference, the Trial Court found and held, *inter alia*, that this was a marriage of long duration, that both parties "have essentially equal abilities to earn a living," that Husband "has substantially greater separate assets than [Wife]," and that "there's sufficient assets within the marital estate to provide for the wife ...." The Trial Court awarded Wife the $200,000 in alimony in solido from Husband's share of one of the parties' joint accounts.

Husband filed a motion to alter or amend or for a new trial. After further hearing, the Trial Court, *inter alia*, denied the motion to alter or amend with regard to the award of alimony in solido of $200,000, and the award of alimony in solido of $12,000, but reversed its award of attorney's fees to Wife finding that "based upon the equities of the case" that neither party should be awarded attorney's fees. Husband also filed a motion for apportionment of tax liability, and the Trial Court held a hearing on this motion and issues raised by Wife regarding the alimony which the Trial Court had reserved from the previous hearing. The Trial Court entered its order on May 3, 2011, *inter alia*, clarifying how Husband is to pay the $200,000 in alimony in solido, and denying Husband's motion with regard to apportionment of tax liability. Husband appeals to this Court.

**Discussion**

Although not stated exactly as such, Husband raises one issue on appeal: whether the Trial Court erred in awarding Wife $200,000 as alimony in solido. Wife raises an issue regarding whether the Trial Court erred in denying her attorney's fees, and further requests an award of attorney's fees on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of

correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

As our Supreme Court recently instructed:

For well over a century, Tennessee law has recognized that trial courts should be accorded wide discretion in determining matters of spousal support. *See Robinson v. Robinson*, 26 Tenn. (7 Hum.) 440, 443 (1846) ("Upon a divorce . . . the wife is entitled to a fair portion of her husband's estate for her support, and the amount thus to be appropriated is a matter within the legal discretion of the chancellor ...."). This well-established principle still holds true today, with this Court repeatedly and recently observing that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award. *See, e.g., Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000).

Equally well-established is the proposition that a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard*, 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew*, 40 S.W.3d at 470; *Robertson v. Robertson*, 76 S.W.3d 337, 340-41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard*, 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson*, 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved

a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson*, 318 S.W.3d at 335 (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision. *Wright*, 337 S.W.3d at 176; *Henderson*, 318 S.W.3d at 335.

\* \* \*

The second type of support, alimony in solido, is also a form of long-term support. The total amount of alimony in solido is set on the date of the divorce decree and is either paid in a lump sum payment of cash or property, or paid in installments for a definite term. Tenn. Code Ann. § 36-5-121(h)(1); *Broadbent Broadbent*, 211 S.W.3d at 222 ("Alimony *in solido* consists of a definite sum of money that is paid in a lump sum or in installments over a definite period of time."). "A typical purpose of such an award would be to adjust the distribution of the parties' marital property." *Burlew*, 40 S.W.3d at 471. Alimony in solido "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121 (d)(5). Unlike alimony in futuro, the other form of long-term support, alimony in solido is considered a final judgment, "not modifiable, except by agreement of the parties," and does not terminate upon the death or remarriage of the recipient or payor spouse. Tenn. Code Ann. § 36-5-121(h)(2)-(3); *see Riggs*, 250 S.W.3d at 456 n.3.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105-06, 108 (Tenn. 2011) (footnote omitted).

In pertinent part, Tenn. Code Ann. § 36-5-121 provides:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which is would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party had made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121 (i) (2010).

We first address whether the Trial Court erred in awarding Wife $200,000 as alimony in solido. Husband does not contest on appeal the award to Wife of $12,000 as alimony in solido to cover her estimated health insurance costs for three years.

To begin, we note that it is impossible for us to tell given the record now before us on appeal the exact value of the marital property that each party received in the divorce, and the exact value of each parties' separate property. Although each party submitted a chart at trial listing the values of said property, the numbers assigned to items of property, particularly items of separate property, differ significantly. This evidence coupled with the scant testimony regarding the exact values of separate assets, as discussed fully above, constitutes all of the relevant evidence in the record now before us with regard to the parties' separate assets.

While the Trial Court found that the parties "have essentially equal abilities to earn a living," the Trial Court also made the specific findings that Husband "has substantially greater separate assets than [Wife]," and that "there's sufficient assets within the marital estate to provide for the wife …." Given the record before us, we cannot say that the evidence preponderates against these findings.

In addition to the findings discussed above, the evidence in the record on appeal reveals that Wife has not worked outside of the home since the parties married, and that this was a marriage of relatively long duration. The evidence shows that Wife was awarded the divorce based upon Husband's stipulation that he was guilty of inappropriate marital conduct. In addition, Wife testified that the parties spent some of her separate assets for living expenses, which allowed Husband to maintain his separate assets. Wife also testified that Husband had promised her that the HELOC would be paid off using Husband's separate assets. The evidence, however, shows that the HELOC was not paid off during the marriage.

What is clear from the record before us is that the Trial Court considered all of the relevant statutory factors when making its determination regarding alimony, and that the Trial Court made specific findings of fact with regard to this issue. The evidence in the record before us does not preponderate against the Trial Court's findings. As such, we find no error in the Trial Court's award to Wife of $200,000 in alimony in solido as support and to adjust the distribution of the marital property.

We next consider Wife's issue regarding whether the Trial Court erred in reversing its initial decision to award her attorney's fees as alimony in solido. Although the Trial Court initially awarded Wife attorney's fees as alimony in solido, it reconsidered and reversed this decision finding that "based upon the equities of the case" neither party should be awarded attorney's fees. Given the record now before us on appeal, as discussed more fully above, we cannot find that the Trial Court abused its discretion when it determined that neither party should be awarded attorney's fees.

In the exercise of our discretion in light of the record before us, we decline to award either party attorney's fees on appeal.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Kenneth A. Ritchie, and his surety.

_____
D. MICHAEL SWINEY, JUDGE